[Docket No. 26]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| CHARLES W. FOULKE, JR., *et al.*, | Case No. 23-cv-2543 (RMB/SAK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION** |
| TOWNSHIP OF CHERRY HILL, *et al.*, | **&** |
| | **ORDER** |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

In this land-use dispute, Plaintiffs Charles W. Foulke, Jr. ("**Mr. Foulke**"), Lenny Reality, LLC, and Foulke Management Corp. (collectively, "**Plaintiffs**") sue the Township of Cherry Hill ("**Township**"), the Cherry Hill Zoning Board of Adjustment ("**Zoning Board**"), and Cherry Hill Zoning Officer Kathleen Gaeta ("**Officer Gaeta**") (collectively, "**Defendants**") under 42 U.S.C. § 1983. Plaintiffs, who operate Cherry Hill Chrysler Dodge Jeep Ram ("**Cherry Hill Dodge**"), allege that, after crediting neighbors' noise complaints, the Township improperly rescinded permits that allowed Plaintiffs to expand their parking lot. The Zoning Board denied their appeal. Having sought reissuance of the permits by filing an action in lieu of prerogative writs in state court under N.J. Ct. R. 4:69-1, Plaintiffs seek to recover damages here for violations of the Takings Clause of the Fifth Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

1

Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint.  Plaintiffs have opposed the Motion, and the Court has considered the parties' submissions without oral argument pursuant to Local Civil Rule 78.1(b). Because the First Amended Complaint is an improper "shotgun" pleading, the Court must dismiss it without prejudice.  Plaintiffs have inappropriately asserted their claims against "Defendants" as a collective unit, without specifying the conduct establishing each Defendant's liability for every claim asserted.  For this reason, as more fully expressed below, the Motion will be **GRANTED**, and Plaintiffs will be given leave to file a second amended complaint.

## I.    FACTUAL BACKGROUND

Mr. Foulke owns a car dealership along Route 70 in Cherry Hill, New Jersey. [First Am. Compl. ¶¶ 3–4, 17.]  For over 50 years, Mr. Foulke has operated Cherry Hill Dodge (through Foulke Management Corp.) on property referred to as "Block 137.01, Lot 1" on the Township's official tax maps (the "**Dealership Property**").  [*Id.* ¶¶ 3–4.]  Lenny Reality LLC, the owner of record, leases the Dealership Property to Foulke Management Corp.  [*Id.* ¶ 4.]  Several other car dealerships neighbor Cherry Hill Dodge, including Subaru, Volvo, Mitsubishi, and Kia.  [*Id.* ¶ 5.]  All of this property is zoned "B2," referring to highway business.  [*Id.* ¶ 16.]

There are additional parcels adjoining the Dealership Property on the same block.  [*See* First Am. Compl. Ex. A, Docket No. 22-1 (satellite image of property).] They include Block 137.01, Lots 2, 3, and 4 (the "**Additional Property**").  [*Id.* ¶ 6.]

2

Lenny Reality LLC purchased Lot 3 on February 1, 2018, and Lots 2 and 4 on October 7, 2021. [*Id.*] The only other parcel on Block 137.01 is Lot 5, which is owned by Frank Maloney and his wife (the "**Maloney Property**"). [*Id.* ¶ 8.] There, at 1207 Chambers Avenue, Mr. Maloney operates a tailoring business. [*Id.* ¶ 9.] Mr. Maloney is apparently the uncle of Michelle Samalonis, the Chief Financial Officer / Controller / Treasurer of the Township. [*Id.* ¶ 25.]

At some point in 2020, Mr. Foulke decided to expand the Dealership Property. [First Am. Compl. ¶ 17.] He sought to construct a parking lot on the Additional Property for 75 new employee parking spaces and to lease the parking lot to Foulke Management Corp. [*Id.*] Accordingly, he applied to the Township Planning Board (the "**Planning Board**") to consolidate the Additional Property with the Dealership Property and to demolish the existing residential structures on the Additional Property. [*Id.*]

On August 3, September 8, and October 5, 2020, the Planning Board held public hearings to consider Mr. Foulke's application. [First Am. Compl. Ex. B at 1, Docket No. 22-2.] During those hearings, Mr. Maloney and residents of the nearby Locustwood neighborhood objected to the parking lot expansion project. [First Am. Compl. ¶¶ 21–22.] Among several concerns, they testified regarding the constant use of vehicle alarms and horns on the Dealership Property, which they believed to be causing a nuisance. [*See* Twp. of Cherry Hill Planning Bd. Resol. Re: Appl. No. 18-P-0020, at 9–11, First Am. Compl. Ex. B (hereinafter, "**Resolution No. 18-P-0020**")

(summarizing neighbors' public testimony).]   They identified other concerns too, including the orientation of lights on the property, and several testified that Mr. Foulke has not been a good neighbor. [*Id.* at 13–15.]  Mr. Foulke, in turn, acknowledged his neighbors' frustrations and advised that while he was not aware of all their concerns, he wanted to address them.  [*Id.* at 16.]  But he also testified that additional employee parking spaces were necessary to avoid "parking and circulation conflicts" and that the proposed improvements would correct these problems.  [*Id.* at 6–7.]  He further explained that designated parking for employees would free up space for service and customer vehicles.  [*Id.* at 18.]

Ultimately, on January 19, 2021, the Planning Board approved Mr. Foulke's application.  [First Am. Comp. ¶ 29; *see also* Resolution No. 18-P-0020.]  But the approval was subject to several conditions of use, including:

(g)     No parking shall be permitted in any drive aisles on site.

(h)     No off-site deliveries will be permitted and there shall be no delivery parking on Fulton Avenue and no employee or delivery parking on Wynnwood Avenue or Chambers Avenue.

(i)     The drive aisle off of Fulton Street is to remain clear.

(j)     There shall be no test drives, car repairs tests or employee parking in surrounding neighborhood streets.

. . .

(u)     [Mr. Foulke] shall put in place a car location procedure in place of car horns or car alarms to locate vehicles, the utilization of which on site shall be strictly prohibited.

. . .

(z)     [Mr. Foulke] shall comply with all applicable County and Township Noise Ordinances.

[Resolution No. 18-P-0020, at 24–26; First Am. Compl. ¶ 33.]  Mr. Foulke did not challenge the conditional approval of his application.  Rather, he accepted the conditions of use with the understanding that they would be enforced after the demolition and construction projects had been completed.  [First Am. Compl. ¶ 39.] Still, he alleges that no other car dealerships in the Township are required to comply with similar conditions to operate their business.  [*Id.* ¶ 34.]

In December 2022, after delays caused by the COVID-19 pandemic, Mr. Foulke applied for zoning and demolition permits to begin the parking lot expansion project. [*Id.* ¶ 42.] On December 21, 2022, the Township issued to Mr. Foulke a zoning permit for the construction aspects of the project.  [*Id.* ¶ 43.]  The permit advised that "[f]ailure to comply with any and all conditions of the Planning Board approval (#18-P-0020), particularly those enumerated under #6 on pages 24 through 26 of the approving Resolution, may result in the rescinding of this permit."  [*Id.* ¶ 44; *see also* Cherry Hill Twp. Zoning Permit No. ZP-22-1649, First Am. Compl. Ex. C, Docket No. 22-3.]  On December 22, 2022, the Township issued Lenny Reality LLC two zoning permits for the demolition aspects of the project, i.e., to remove the residential structures located at 1313 and 1315 Wynnwood Avenue.  [First Am. Compl. ¶ 45; *see also* Cherry Hill Twp. Zoning Permit Nos. ZP-22-1668 & ZP-22-1669, First Am. Compl. Ex. D, Docket No. 22-4.]  The demolition permits were approved by Officer Gaeta.  [First Am. Compl. ¶ 45.]

Having received the requisite approvals, Mr. Foulke engaged a firm to prepare the two residential structures for demolition.  [*See id.* ¶ 47.]  But on January 27, 2023,

the Township received a noise complaint about the Dealership Property.  [*Id.* ¶ 49.]
Keath Mahan, a Zoning Enforcement Officer for the Township, investigated and
determined that horn sounds were emanating from the Dealership Property and the
Additional Property.  [*Id.* ¶ 51.]  He documented 28 incidents over a two-week period,
noting that "several unoccupied vehicles were observed with activated alarm systems
on the main lot and mechanics areas" and that "lot attendants were observed activing
[sic] alarms via remote before exiting or relocating on the lot."  [Feb. 22, 2023, Ltr.
from Keath Mahan to Charles W. Foulke, Jr. & Lenny Reality LLC at 1, First Am.
Compl. Ex. G, Docket No. 22-7 (hereinafter, "**Notice of Violation**"); First Am.
Compl. ¶ 52.]  In the letter, Mr. Mahan referred to § 5-1.6 of the Cherry Hill Code,
directed Mr. Foulke to eliminate car alarm activations on the Dealership Property, and
noted that "[f]ailure to correct and resolve this violation will leave us with no other
option than taking immediate action through the Cherry Hill Municipal Court in
accordance with Section 5-1.6 of the Cherry Hill Township General Ordinance for
violations that extend beyond the abatement date of Friday, March 3, 2023." [Notice
of Violation at 1 (emphasis omitted).]  As alleged, neither Mr. Foulke nor Lenny
Reality LLC ever received the Notice of Violation.  [First Am. Compl. ¶ 58.]

At a Township council meeting on February 27, 2023, Mr. Maloney and other
neighbors submitted additional complaints about the operation of Cherry Hill Dodge.
[*Id.* ¶ 60.]  Mr. Foulke did not participate in this meeting, but he was contacted by
Planning Board Secretary Cosmas Diamantis thereafter and advised of the complaints.
[*Id.* ¶ 61.]  Mr. Foulke denied them.  [*Id.* ¶ 62.]  These complaints are not described in

the pleading, but Plaintiffs indicate that they were "vague" and "unsubstantiated." [*Id.* ¶ 63.] During this exchange, Mr. Diamantis suggested to Mr. Foulke that he abandon his plans to build a parking lot and sell the Additional Property to the Township so it could develop a park or green space for the Locustwood neighborhood. [*Id.* ¶ 65.] Mr. Foulke refused this request. [*Id.*]

On April 17, 2023, the Township held a meeting and considered a request from Mr. Maloney to rescind Mr. Foulke's construction and demolition permits. [*Id.* ¶¶ 66–70.] Plaintiffs were not provided with notice of this meeting, [*id.* ¶ 69], and did not learn of it until May 1, 2023, [*id.* ¶ 77]. Messrs. Diamantis and Mahan testified at the meeting. [*Id.* ¶¶ 70–71.] Three days later, the Township rescinded all three of Plaintiffs' zoning permits. [*Id.* ¶ 73; *see also* Cherry Hill Twp. Rescissions of Zoning Permits, First Am. Compl. Ex. E, Docket No. 22-5 (hereinafter, "**Rescission Notice**").] Each rescission notice advised that the applicable zoning permit was rescinded "without prejudice," as follows:

> [F]or "failure to comply with any and all conditions of the Planning Board approval (#18-P-0020), particularly those enumerated under #6 on pages 24 through 26 of the approving Resolution," and specifically condition u, which strictly prohibited the use of car horns or alarms to locate vehicles, and condition z, which required compliance with applicable Township Noise Ordinance, as noted in the Zoning Violation dated February 22, 2023. Moreover, the Township has received additional complaints regarding violations of condition g (no parking shall be permitted in any drive aisles on site), condition h (no off-site deliveries will be permitted . . . on Fulton Ave . . .), and condition j (no test drives car repair tests in the surrounding neighborhood) at a Township Council Meeting on February 27, 2023, and a Community Meeting with Locustwood Neighbors on April 17, 2023.

[First Am. Compl. ¶ 74 (citing Rescission Notice).]  The notice also provided that each applicable zoning permit would be reissued "upon confirmation that the Applicant is in compliance with any and all applicable conditions of the Planning Board approval." [*Id.* ¶ 75 (citing Rescission Notice).]  Officer Gaeta signed each permit rescission.  [*See generally* Rescission Notice.]

Shortly after receiving notice of the permit rescissions, on May 9, 2023, Plaintiffs filed an appeal with the Zoning Board under N.J. Stat. Ann. §§ 40:55D-70(a), 40:55D-72.  [First Am. Compl. ¶ 84; *see also* Notice of Administrative Appeal, First Am. Compl. Ex. H, Docket No. 22-8.]  The Zoning Board held a hearing on September 7, 2023.  [First Am. Compl. ¶ 87.]  During that proceeding, the Zoning Board considered whether there was sufficient evidence to justify the rescissions.  [*Id.* ¶ 92 (citing Tr. of Zoning Bd. Hr'g at 41:17–19, First Am. Compl. Ex. I, Docket No. 22-9).]  To establish that the record was incomplete, Plaintiffs questioned Officer Gaeta. [*Id.* ¶ 93.]  She testified, among other things, that she did not independently investigate whether the conditions outlined in Resolution No. 18-P-0020 were violated and that, rather, she rescinded the permits at the direction of her supervisor, Mr. Diamantis.  [*Id.* ¶ 94.]  She also did not take into account the credibility of the complainants.  [*Id.*]  At the conclusion of the hearing, the Zoning Board denied Plaintiffs' appeal.  [*Id.* ¶ 101.] Memorializing its decision in a written statement, the Zoning Board indicated that Mr. Foulke failed to call any witnesses or introduce any evidence to refute the noise and other complaints against him.  [*Id.* ¶¶ 108–09; *see also* Zoning Bd. Resol. Re: Appl. No. 23-Z-0018, at 2–3, First Am. Compl. Ex. J, Docket No. 22-10 (dated Oct. 19, 2023)).]

8

Following the appeal, Plaintiffs provided Defendants with a certification attesting to compliance with Resolution No. 18-P-0020, but Defendants have refused to reissue the permits. [First Am. Compl. ¶¶ 111–12.] On October 31, 2023, Plaintiffs filed a complaint in lieu of prerogative writs in New Jersey Superior Court to challenge the determination of the Zoning Board. [*Id.* ¶ 114.] That civil action involves essentially the same facts and similar, although substantively different, claims as those involved here. [*Compare* First Am. Compl., *with* Compl., *Lenny Reality LLC v. Twp. of Cherry Hill*, Case No. CAM-L-003053-23 (N.J. Super. Ct. filed Oct. 31, 2023).] It remains pending.

## II.    PROCEDURAL HISTORY

On May 9, 2023, Plaintiffs filed this action under 42 U.S.C. § 1983, appearing to assert claims under the Fourteenth Amendment of the U.S. Constitution. [*See generally* Compl., Docket No. 1.] They sought to compel reissuance of the demolition permits. [*Id.*] After the parties exchanged pre-motion letters pursuant to Rule I.A. of this Court's Individual Rules and Procedures, [Docket Nos. 9, 10], the Court scheduled this matter for a pre-motion conference, [Text Order, Docket No. 11], which it held via Microsoft Teams on July 6, 2023, [Docket No. 12]. The Court directed the parties to pursue informal settlement discussions and to apprise the Court of their efforts. [*See id.*] In a joint submission a few weeks later, the parties advised the Court that their efforts had been unsuccessful, and the Court scheduled an in-person conference for September 14, 2023. [Text Order, Docket No. 13.] The Court held the in-person conference on September 26, 2023. [Docket Nos. 15, 16.]

During the conference, the Court once more attempted to assist the parties to resolve their dispute informally and without unnecessary motion practice. [Docket No. 16.] That effort again failed, and Defendants filed their initial motion to dismiss. [Docket No. 19.] On November 13, 2023, amending their pleading pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs filed the operative First Amended Complaint, asserting: (i) a violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution, [First Am. Compl. ¶¶ 120–44 (Count I)]; (ii) a violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, [*id.* ¶¶ 145–59 (Count II)]; (iii) a procedural violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, [*id.* ¶¶ 160–69 (Count III)]; and (iv) a substantive violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, [*id.* ¶¶ 170–77 (Count IV)]. Plaintiffs now seek damages, an injunction directing Defendants to cease violating their rights, attorneys' fees and costs, and punitive damages. [*Id.* at "Wherefore" clauses.] Plaintiffs no longer seek mandamus in the form of an order directing the reissuance of the rescinded zoning permits. [*Compare* First Am. Compl. at "Wherefore" clauses, *with* Compl. at "Wherefore" clause.] As a result of Plaintiffs' filing the First Amended Complaint, the Court denied Defendants' initial motion to dismiss as moot. [Text Order, Docket No. 23.]

On December 8, 2023, Defendants filed their pending Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). [Mot. Dismiss, Docket No. 26; Defs.' Mem. Supp. Mot. Dismiss, Docket No. 26-1 ("**Defs.' Br.**").] Plaintiffs opposed, [Pls.' Mem.

Opp'n Defs.' Mot. Dismiss, Docket No. 27 ("**Pls.' Opp'n**")], and Defendants filed an overlength reply brief, [Defs.' Br. Reply Pls.' Opp'n, Docket No. 31 ("**Defs.' Reply Br.**")].[1] As the Motion to Dismiss is fully briefed, it is ripe for adjudication.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1).

A complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron / Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Subject-matter jurisdiction challenges can be either facial or factual. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.

---

[1] Plaintiffs object to the length and formatting of Defendants' Reply Brief as a violation of Local Civil Rule 7.2. [Docket No. 32.] They do not seek a particular form of relief, however. [*See id.*] In response, Defendants submitted a post-hoc request for leave to file an overlength brief. [Docket No. 33.] Local Civil Rule 7.2 provides that reply briefs are limited to 15 "ordinary typed or printed pages" and briefs of greater length "will only be accepted if special permission of the Judge is obtained prior to submission of the brief." L. Civ. R. 7.2(b). Usually, the Court would strike an overlength reply brief where a party had failed to obtain the Court's prior written consent, especially if a submission were egregiously overlength. Here, however, Defendants' 18-page Reply Brief is not egregiously overlength. Nor would striking it make an ounce of difference. So, the Court will decline to do so in this instance. *See, e.g.*, *Fisher v. Pratt*, 2020 WL 773262, at *3 n.7 (D.N.J. Feb. 18, 2020) (declining to strike reply brief where party had failed to obtain prior consent of court, as party's brief was overlength by one page); *Certain Underwriters at Lloyd's, London v. 170 Estell Manor, LLC*, 2020 WL 1864604, at *2 n.1 (D.N.J. Apr. 14, 2020) (noting that, although party "obviously violated the Local Rules" in filing overlength reply brief without obtaining court's prior consent, court would still grant post-hoc motion for leave to file excess pages); *see also Johnson v. Guhl*, 91 F. Supp. 2d 754, 765 (D.N.J. 2000). Therefore, Defendants' request is granted, and the Court accepts the overlength Reply Brief as filed on the docket. "Nevertheless, the parties are advised that future violation of the Local Civil Rules will result in [an] appropriate sanction." *170 Estell Manor, LLC*, 2020 WL 1864604, at *2 n.1.

1977).  Facial challenges contest the sufficiency of the pleadings and require a court to consider only " 'the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.' " *In re Shering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Factual challenges contest the allegations in the complaint and "the court may consider evidence outside the pleadings." *Gould Elec.,* 220 F.3d at 176.  The burden of persuasion lies with Plaintiffs, as the party invoking federal jurisdiction.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991).

A challenge to the ripeness of an action is properly brought as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).  *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005) (first citing *Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319 (3d Cir. 1998); then citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004)).  "Because ripeness affects justiciability, . . . unripe claims should ordinarily be disposed of on a motion to dismiss." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993).  And "[a]s long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court 'may inquire, by affidavit or otherwise, into facts as they exist.' " *Id.* at 1290 n.7 (quoting *Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 n.10 (3d Cir. 1992)).

12

**B.      Rule 12(b)(6).**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  To withstand a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is met when there is enough factual content in the complaint to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When reviewing the sufficiency of a complaint, a court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005).  A court need not accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court's role in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

## IV.   DISCUSSION[2]

Plaintiffs sue the Township, the Zoning Board, and Officer Gaeta pursuant to 42 U.S.C. § 1983.  [First Am. Compl. ¶ 1.]  Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute does not create substantive rights; "it provides only remedies for deprivation of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted).  To prevail under § 1983, "a plaintiff must allege the violation of a right secured by the

---

[2] As Plaintiffs assert violations of the United States Constitution pursuant to 42 U.S.C. § 1983, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.  *See Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003) (explaining that district courts have jurisdiction over federal civil rights claims brought under § 1983).

Constitution and laws of the United States[ ] and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Burella v. City of Phila.*, 501 F.3d 134, 139 (3d Cir. 2007). Municipalities and other local government units are "persons" for the purposes of § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976).

Here, Plaintiffs claim violations of their rights to due process and equal protection as guaranteed by the Fourteenth Amendment.[3] [*See* First Am. Compl. ¶¶ 145–77.] They also assert that they were deprived of just compensation for the taking of private property as secured by the Takings Clause of the Fifth Amendment.[4] [*See id.* ¶¶ 120–44.] They allege that the Township, the Zoning Board, and Officer Gaeta deprived them of these rights while acting under color of state law. [*Id.* ¶¶ 120–77.]

Defendants move to dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6). They offer several arguments in support of their position. Preliminarily, they argue that the First Amended Complaint is a "shotgun" pleading that must be dismissed as procedurally improper, [Defs.' Br. at 11–13], and they submit that Plaintiffs' due-

---

[3] The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

[4] The Takings Clause of the Fifth Amendment provides that "private property [shall] not be taken for public use, without just compensation." U.S. Const. amend V. The clause applies to state and local government through the Fourteenth Amendment. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017); *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018).

process claims are not yet ripe because of the pending action in New Jersey Superior Court, [*id.* at 14–17]. On the merits, they argue that Plaintiffs have not pleaded sufficient facts to establish a plausible violation of the Takings Clause, the Equal Protection Clause, or the Due Process Clause. [*Id.* at 17–37.] Finally, Defendants contend that Plaintiffs' suit against Officer Gaeta must be dismissed and that there is no basis for punitive damages in this action. [*Id.* at 37–38.] As Defendants' preliminary argument is a threshold matter concerning the Court's ability to construe Plaintiffs' claims against each Defendant, the Court addresses it first.

\*   \*   \*

Defendants seek to dismiss the First Amended Complaint as an improper "shotgun" pleading. In Defendants' view, Plaintiffs fail to differentiate among them, leaving the Township, the Zoning Board, and Officer Gaeta to guess as to the relevance of each claim. Plaintiffs oppose, arguing that "[t]he facts of this case are not complicated" and that they make clear in the First Amended Complaint that "Defendants worked in concert to deprive Plaintiffs of their Constitutional rights." [Pls.' Opp'n at 4 (citing First Am. Compl. ¶ 81).]

Every pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3); *Travaline v. U.S. Supreme Ct.*, 424 F. App'x 78, 79 (3d Cir. 2011). Each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In the Third Circuit, pleadings that violate Rule 8 are sometimes disparagingly referred to as "shotgun" pleadings. *See, e.g.*, *Cambridge Mut. Fire Ins. Co. v. Stihl Inc.*, 2023 WL

5928319, at *2 (D.N.J. Sept. 12, 2023); *Conserve v. City of Orange Twp.*, 2022 WL 1617660, at *1 n.2 (D.N.J. May 23, 2022); *Radhakrishnan v. Pugliese*, 2021 WL 11593799, at *1 (D.N.J. May 21, 2021); *Karupaiyan v. Atl. Realty Dev. Co.*, 2020 WL 13728036, at *2 (D.N.J. Jan. 17, 2020); *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 582 (E.D. Pa. 2019); *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017); *Litwak v. Tomko*, 2017 WL 168053, at *4 (M.D. Pa. Jan. 17, 2017); *Lapella v. City of Atlantic City*, 2012 WL 2952411, at *5 n.3 (D.N.J. July 18, 2012).

In brief, a shotgun pleading is a complaint that "fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Morales v. New Jersey*, 2023 WL 5003891, at *4 (D.N.J. Aug. 3, 2023) (cleaned up) (citing *Pugliese*, 2021 WL 11593799, at *1). More commonly, courts in this circuit refer to these types of complaints as impermissible "group" pleadings. *See, e.g.*, *Salyers v. A.J. Blosenski, Inc.*, -- F. Supp. 3d --, --, 2024 WL 1773368, at *6 (E.D. Pa. Apr. 24, 2024); *SEC v. Mintz*, -- F. Supp. 3d --, --, 2024 WL 1173096, at *17–18 (D.N.J. Mar. 18, 2024) (Bumb, C.J.); *Reddick v. Hicks*, 2023 WL 4579884, at *3 (D.N.J. July 18, 2023); *Pellecchia v. Cnty. of Burlington*, 2022 WL 17667906, at *2 (D.N.J. Dec. 13, 2022); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386–87 (D.N.J. 2019); *Forero v. APM Terminals*, 2019 WL 6168031, at * 5 (D.N.J. Nov. 19, 2019); *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015); *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *6 (D.N.J. June 9, 2015); *Japhet v. Francis*

*E. Parker Mem'l Home, Inc.*, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014); *Falat v. Cnty. of Hunterdon*, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

No matter the label, pleadings of this nature have long been criticized. *See Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (seeking to "eliminate the all too common shotgun pleading approach" because it fails "to provide the defendant with sufficient notice of the claims asserted" (citing *Frazier v. Se. Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1985))); *see also, e.g.*, *Morales*, 2023 WL 5003891, at *4 ("Shotgun pleadings or 'vague group pleadings' are impermissible under Rule 8." (quoting *Karupaiyan*, 2020 WL 13728036, at *2)). But it is the Eleventh Circuit that has the robust doctrine prohibiting shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Courts in the Third Circuit often cite to it. *E.g.*, *Stihl Inc.*, 2023 WL 5928319, at *2; *Pugliese*, 2021 WL 11593799, at *1; *Karupaiyan*, 2020 WL 13728036, at *2; *Bartol*, 251 F. Supp. 3d at 859; *see also Bartol*, 251 F. Supp. 3d at 859 n.3 ("[D]istrict courts within the Third Circuit often cite to the Eleventh Circuit for this [shotgun-pleading] law." (first citing *Lapella*, 2012 WL 2952411, at *5 n.3; then citing *Tomko*, 2017 WL 168053, at *4)).

The Eleventh Circuit has categorized shotgun pleadings into four distinct groups:  (i) when a complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (ii) when a complaint "does not commit the mortal sin of re-alleging all preceding counts but is

18

guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (iii) when a complaint "commits the sin of not separating into a different count each cause of action or claim for relief"; and (iv) when a complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, the First Amended Complaint violates Rule 8 because it is an impermissible shotgun pleading of the fourth variety. *See id.* When identifying the allegations supporting each of their constitutional claims, [see First Am. Compl. ¶¶ 120–77], Plaintiffs fail to identify the specific conduct establishing each Defendant's liability. Instead, they repeatedly refer to "Defendants" as a collective unit, [*see id.*], which they continue to do even in their Opposition Brief, [*see, e.g.*, Pls.' Opp'n at 6–7]. This practice sows confusion about Plaintiffs' theories of liability, requiring the Court to wade through the pleading to discern whether Plaintiffs truly intended to assert every claim against each Defendant.[5] The Court has little tolerance for imprecise

---

[5] The problem is not remedied by claiming that the Township, the Zoning Board, and Officer Gaeta acted "in concert" to deprive Plaintiffs of their constitutional rights, [*see* Pls.' Opp'n at 4], as if they were jointly and severally liable for each claim.

pleadings.  "They waste scare judicial resources, inexorably broaden the scope of discovery, wreak havoc on . . . court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up) (citation omitted).  Such pleadings should be dismissed without prejudice.  *See, e.g.*, *Galicki v. New Jersey*, 2015 WL 3970297, at *4 (D.N.J. June 29, 2015) (dismissing substantive constitutional claims under § 1983 without prejudice where plaintiffs' allegations "suffer[ed] from 'collectivized' pleading" and "fail[ed] to put each individual defendant on notice of the particular allegations alleged against that defendant"); *see also Mills*, 406 F. Supp. 3d at 387 (following the general rule that an initial dismissal for inadequate pleading is without prejudice).

To illustrate the practical consequences of Plaintiffs' improper shotgun approach, the Court considers some of Defendants' other arguments.  For example, Defendants contend that Plaintiffs' claims must be dismissed against Officer Gaeta. [Defs.' Br. at 37.]  Observing that the First Amended Complaint does not identify the capacity in which Officer Gaeta has been sued, Defendants submit that an official-capacity suit cannot proceed as a matter of law and a personal-capacity suit fails for lack of specificity under Rule 8.  [*Id.* at 37 & n.8.]  The Court agrees.

---

To the contrary, Plaintiffs' Opposition Brief suggests that they intend to assert some claims against the Township and/or Officer Gaeta, and others against the Zoning Board.  The Court will not speculate where an amended pleading could provide clarity. *Cf. Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal citation and quotation marks omitted)).

An official-capacity suit is "in all respects other than name" an action against the governmental entity itself, for it is the "real party in interest." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985))).  Where a plaintiff sues a public officer in her official capacity and the public entity that employs her, the action against the officer is "redundant," and all claims asserted against her in her official capacity should be dismissed.  *Cuvo v. Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006); *see also Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (observing that claims, "insofar as they are against the defendant officials in their official capacities, are only a duplication of the counts asserted against the [t]ownship itself").  Thus, Plaintiffs cannot pursue their claims against Officer Gaeta in her official capacity.

But Plaintiffs would appear to agree with this result in any case, as they submit in their Opposition Brief that Officer Gaeta can be sued in her *personal* capacity.  [Pls.' Opp'n at 36.]  In this respect, they contend that Officer Gaeta is individually liable for violating Plaintiffs' constitutional rights by rescinding their zoning permits and refusing to reissue them over Plaintiffs' objection.  [*Id.*]

The Court again observes that the First Amended Complaint does not identify the capacity in which Officer Gaeta has been sued.  [*See generally* First Am. Compl.]  Ordinarily, "[t]o determine whether a plaintiff sued a defendant in his personal capacity, official capacity, or both, we look to the complaint and the course of

proceedings." *Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)) *see also Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005). As the First Amended Complaint is silent as to the capacity in which Officer Gaeta has been sued and Plaintiffs have effectively conceded that Officer Gaeta has not been sued in her official capacity, [*see* Pls.' Opp'n at 36 ("Nowhere in the [First Amended Complaint] is it alleged that Defendant Gaeta is being sued in her 'official capacity.' ")], the Court focuses on whether she can be liable in her personal capacity. *See Atwell*, 274 F. App'x at 118 (assuming plaintiff sued public official in personal capacity where complaint was ambiguous and punitive damages were demanded); *Gregory*, 843 F.2d at 120 (resolving doubts in plaintiff's favor and assuming public officials were sued in personal capacities).

Personal-capacity suits seek to impose liability against the individual official for actions she takes under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166. Therefore, to succeed on their individual liability theory, Plaintiffs must allege sufficient facts to establish that Officer Gaeta's own conduct violated Plaintiffs' constitutional rights. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (explaining that a plaintiff must demonstrate the defendant's personal involvement in the constitutional violations by "describing the defendant's

participation in or actual knowledge of and acquiescence in the wrongful conduct" (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988))).

Defendants argue that Plaintiffs' individual liability theory fails because they have not alleged sufficient facts to satisfy the baseline requirements of Federal Rule of Civil Procedure 8(a)(2). [Defs.' Br. at 37 n.8.] In opposition, Plaintiffs point to several factual allegations, [Pls.' Opp'n at 36 (citing First Am. Compl. ¶¶ 73, 75, 78, 81–83, 88, 93–97, 110–12)], but these paragraphs fail to elucidate how Officer Gaeta herself violated Plaintiffs' constitutional rights under the Takings Clause, the Due Process Clause, and the Equal Protection Clause. For instance, they do not adequately describe how she personally exhibited conscience-shocking behavior by rescinding Plaintiffs' zoning permits or specify how she denied Plaintiffs' due process during the September 7, 2023, hearing. In fact, most of the paragraphs do not even mention Officer Gaeta; they detail the actions of non-party employees of the Township and/or Zoning Board. And Plaintiffs' sparse treatment in opposition offers little clarity. [*See* Pls.' Opp'n at 36–37.]

Ultimately, all the Court can discern from Plaintiffs' First Amended Complaint is that Officer Gaeta is the official who executed the Rescission Notice that revoked their demolition permits for the Additional Property and who testified at the September 7, 2023, Zoning Board hearing regarding her basis for doing so. [*See* First Am. Compl. ¶¶ 45, 93, 94.] Because Plaintiffs have failed to allege sufficient facts that Officer Gaeta violated Plaintiffs' constitutional rights, the claims against Officer Gaeta in her personal capacity must be dismissed, without prejudice. *See, e.g.*, *Fennell v.*

*Penchishen*, 2019 WL 1934877, at *6 (E.D. Pa. Apr. 30, 2019) (dismissing, without prejudice, claims against officers sued in their individual capacities because plaintiff failed to show how they were personally involved in violating his right to equal protection); *Danielson v. Chester Twp.*, 2013 WL 6094578, at *6–7 (D.N.J. Nov. 19, 2013) (dismissing, without prejudice, First Amendment and Equal Protection Clause claims asserted against individual members of municipal council because plaintiff failed to plead plausible claims); *Goldey v. Pennsylvania*, 1993 WL 93376, at *2–3 (E.D. Pa. Mar. 30, 1993) (dismissing suit against state troopers without prejudice because plaintiffs failed to specify sufficient facts to establish their individual liability).   If Plaintiffs can articulate how Officer Gaeta violated their constitutional rights in her personal capacity, they may file a further amended complaint to assert an individual-capacity suit against her.

The Court recognizes that Defendants have argued in their Reply Brief that Officer Gaeta is entitled to the privilege of qualified immunity.  [Defs.' Reply Br. at 15–17.]  The doctrine shields officials " 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  To determine whether a public official is entitled to qualified immunity, courts engage in a two-step process.  First, the court must determine whether the facts alleged make out a violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court asks whether the right was clearly established at the time of the challenged conduct.

*Id.* A court may tackle these steps in the order it deems appropriate. *Pearson*, 555 U.S. at 236; *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018).

"[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (internal citation, quotation marks, and alterations omitted). Here, however, it would be premature to resolve Officer Gaeta's asserted defense of qualified immunity given the pleading deficiencies addressed above. The Court is not able to discern whether Officer Gaeta has violated Plaintiffs' constitutional rights because it is not clear what the contours are of Plaintiffs' individual liability theory. Accordingly, Officer Gaeta may seek to invoke immunity at a later stage in this proceeding, if appropriate.[6] *See Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 661 (E.D. Pa. 2003) (rejecting defendant's qualified immunity defense at motion to dismiss stage where based on defendant's unfair reading of complaint's allegations); *see also Danielson*, 2013 WL 6094578, at *7 (declining to rule on individual defendants' qualified immunity arguments at pleading stage).

---

[6] In determining whether they can plead facts to show a violation of a clearly established constitutional right, Plaintiffs should be mindful that other doctrines may shield Officer Gaeta from suit. For instance, zoning officials cannot be sued in their individual capacities for conduct relating to the performance of "quasi-judicial" functions. *See, e.g.*, *Lonzetta Trucking & Excavating Co. v. Schan*, 144 F. App'x 206, 210–11 (3d Cir. 2005) (explaining that zoning officials are entitled to absolute immunity from individual-capacity claims to the extent the official was performing a "quasi-judicial" function).

Consider one more consequence of Plaintiffs' shotgun-pleading approach.  In the First Amended Complaint, Plaintiffs demand punitive damages from Defendants as to each claim asserted. [First Am. Compl. ¶¶ 144(d), 159(c), 169(c), 177(c).] Defendants, however, argue that Plaintiffs cannot obtain punitive damages from a municipality, [Defs.' Br. at 37–38], and Plaintiffs would appear to concede the point by implication, arguing in a single sentence that Plaintiffs *can* obtain punitive damages from Officer Gaeta insofar as she is sued in her personal capacity, [Pls.' Opp'n at 37]. Thoughtful planning and careful pleading would obviate this exercise.

It is, of course, well-settled that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) (recognizing continued application of municipal immunity from punitive damages under *City of Newport*).  Such immunity extends to subordinate municipal entities as well.  *See, e.g.*, *Jowett v. Churchill*, 2021 WL 3879084, at *11 (D.N.J. Aug. 31, 2021) (Bumb, J.) (precluding plaintiffs from seeking punitive damages against township board of education); *McLaughlin v. Forty Fort Borough*, 2013 WL 4069528, at *15 (M.D. Pa. Aug. 9, 2013) (striking request for punitive damages against borough and zoning hearing board); *Jodeco, Inc. v. Hann*, 674 F. Supp. 488, 499 (D.N.J. 1987) (dismissing claim for punitive damages against township "and its municipal entities" in zoning dispute).  Accordingly, Plaintiffs cannot seek punitive damages from the Township or the Zoning Board.

Nor can Plaintiffs seek punitive damages from Officer Gaeta.  While it is true that a plaintiff can demand punitive damages from a public official sued in her personal capacity, *Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007); *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428–29 (M.D. Pa. 2009); *King v. Twp. of East Lampeter*, 17 F. Supp. 2d 394, 426 (E.D. Pa. 1998); *Pica v. Sarno*, 907 F. Supp. 795, 805 (D.N.J. 1995), the Court has no basis here to permit Plaintiffs to pursue punitive damages from Officer Gaeta based on the deficient allegations of the First Amended Complaint.  The availability of an award of punitive damages in an individual-capacity suit depends on proving that a defendant's conduct was "motivated by evil motive or intent" or "involve[d] reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (elaborating on punitive damages standard in personal-capacity suit).  Punitive damages are to be "reserved for special circumstances."  *Savarese*, 883 F.2d at 1205.  Because Plaintiffs' claims against Officer Gaeta are not sufficiently pleaded and because they have not alleged facts to establish Officer Gaeta's "evil motive" or "reckless or callous indifference" to their constitutional rights, Plaintiffs' demand for punitive damages must be dismissed without prejudice.  *See, e.g.*, *Reed v. Jersey City*, 2022 WL 1664621, at *9 (D.N.J. May 24, 2022) (dismissing demand for punitive damages where plaintiff had failed to state a viable claim); *McKenna v. Toll Bros., Inc.*, 2015 WL 1874236, at *2–3 (E.D. Pa. Apr. 23, 2015) (dismissing claim for punitive damages because plaintiffs had failed to allege sufficient facts concerning

defendants' evil motive, actual malice, or wanton and willful disregard of plaintiffs' rights).

In sum, the First Amended Complaint must be dismissed as an improper shotgun pleading. Though the Court agrees with Plaintiffs that "[t]he facts of this case are not complicated," [Pls.' Opp'n at 4], additional attention must be devoted to Plaintiffs' theories of liability. The Court will not address Defendants' other arguments until Plaintiffs specify the conduct that they believe to establish each Defendants' liability for each claim asserted.

Careful pleading in civil rights cases is not a matter of etiquette or housekeeping; it is necessary to provide defendants with notice of the claims asserted against them and the grounds upon which each claim rests so that they can properly frame an answer. *See Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (explaining that specificity is critical "to provide defendants with adequate notice to frame an answer" (citing *Frazier v. Se. Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1985))); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). Because the First Amended Complaint fails to do so, the Court concludes that it must be dismissed, without prejudice. *See, e.g.*, *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 860–61 (E.D. Pa. 2017) (dismissing shotgun pleading without prejudice where plaintiff failed to specify which of thirteen causes of action pertained to each

defendant and failed to explain whether claims were brought in individual or official capacities); *see also Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 582 (E.D. Pa. 2019) (dismissing negligence claim without prejudice with leave to amend because plaintiff left defendant to guess as to which facts supported negligence claim asserted).

## V. CONCLUSION

Accordingly, the Court having carefully considered the parties' submissions, and for the reasons expressed above, and for good cause shown,

**IT IS**, on this **29th** day of **July 2024**, hereby:

1.      **ORDERED** that Defendants Motion to Dismiss [Docket No. 26] is **GRANTED**; and it is further

2.      **ORDERED** that the First Amended Complaint [Docket No. 22] is **DISMISSED, WITHOUT PREJUDICE**; and it is further

3.      **ORDERED** that Plaintiffs may file a second amended complaint no later than twenty-one (21) days from the date hereof if they can remedy the deficiencies outlined above; and it is finally

4.      **ORDERED** that Plaintiffs shall keep the Court apprised, by letter submitted on the docket, of all material developments in their pending action in lieu of prerogative writs in New Jersey Superior Court, and that Defendants may respond to such submission(s) if they so choose.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge