[Docket No. 39]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

CHARLES FOULKE, JR., *et al.*,

          Plaintiffs,

    v.

TOWNSHIP OF CHERRY HILL, *et al.*,

          Defendants.

Civil A. No. 23-2543
(RMB/SAK)

**OPINION**

**APPEAREANCES:**

Laura D. Ruccolo
CAPEHART & SCATCHARD, P.A.
Laurel Corporate Center, Suite 300
8000 Midlantic Drive, C.S. 5016
Mount Laurel, New Jersey 08054

    *Attorney for the Plaintiffs*

Eric J. Riso
ZELLER & WIELICZKO, LLP
120 Haddontowne Court
Cherry Hill, New Jersey 08034

    *Attorney for the Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motion to Dismiss [Docket No. 39] filed by Defendants Township of Cherry Hill (the "Township") and Cherry Hill Zoning Board of Adjustment ("Zoning Board" and together with the

Township, the "Defendants"), seeking dismissal of the Second Amended Complaint (the "Complaint") [Docket No. 35] filed by Plaintiffs Charles Foulke, Jr. ("Mr. Foulke"), Foulke Management Corp. ("Foulke Management"), and Lenny Reality, LLC ("Lenny" and collectively with Mr. Foulke and Foulke Management, the "Plaintiffs"). Plaintiffs have opposed the Motion [Docket No. 41] and Defendants have submitted a reply brief in further support of their Motion [Docket No. 42]. The Court has considered the parties' submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Motion will be **GRANTED, in part**, and **DENIED, in part**.

## I.    FACTUAL BACKGROUND[1]

This litigation arises from a land-use dispute between the parties spanning nearly five years. Plaintiffs allege that Defendants unlawfully rescinded certain zoning permits that had been granted for the demolition and construction of property improvements, thereby violating their rights under the United States Constitution [Compl. ¶ 1.]

Mr. Foulke, through Foulke Management, has operated Cherry Hill Chrysler Dodge Jeep Ram ("Cherry Hill Dodge"), a car dealership along Route 70 in Cherry Hill, New Jersey, since 1967. [*Id.* ¶ 25.] The dealership is located on property

---

[1]    The Court draws all factual background from the Complaint, the exhibits referenced therein, and publicly available materials. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). At this stage, the Court accepts all well-pled factual allegations as true and views them in the light most favorable to Plaintiffs. *See Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005).

referred to as "Block 137.01, Lot 1" on the Township's official tax maps (the "Dealership Property."). [*Id.* ¶¶ 3–4.] Lenny is the owner of record of the Dealership Property and leases it to Foulke Management. [*Id.*] Several other car dealerships neighbor the Cherry Hill Dodge, including Subaru, Volvo, Mitsubishi, and Kia. [*Id.* ¶ 13.] All of the property at issue is located in the Highway Business (B2) Zone, where car dealerships and parking lots are permitted uses. [*Id.* ¶¶ 20, 22.]

Block 137.01 includes four additional lots adjoining the Dealership Property. [*See* Compl. Ex. A (Docket No. 35-1) (satellite image of property).] Lots 2, 3, and 4 (the "Additional Property") are owned by Lenny. [Compl. ¶ 14, 16–18.] The final parcel, Lot 5, is owned by Frank Maloney and his wife (the "Maloney Property"). [*Id.* ¶ 17.] Mr. Maloney is alleged to be the uncle of the Chief Financial Officer and Controller of the Township. [*Id.* ¶ 29.]

In 2020, Mr. Foulke decided to expand the Dealership Property and to construct an employee parking lot on the Additional Property. He applied to the Cherry Hill Township Planning Board (the "Planning Board") for approval to consolidate the Additional Property with the Dealership Property and to demolish the existing residential structures on the Additional Property. [*Id.* ¶ 21.] Public hearings were held to consider Mr. Foulke's application. The application was met with opposition from Mr. Maloney and the Locustwood Neighborhood Association. [*Id.* ¶ 25.] Their concerns included the use of vehicle alarms and horns on the Dealership Property, which they believed to be causing a nuisance, as well as the orientation of the lights on the property. [*See* Compl. Ex. B at 9–11, 13–15 (Docket No. 35-2) ("Resolution

No. 18-P-0020") (summarizing neighbors' public testimony).]    Several residents testified that Mr. Foulke had not been a good neighbor.  [*Id.* at 13–15.]  Plaintiffs allege that Mr. Maloney has "instigated other residents to make complaints about Cherry Hill Dodge's operations."  [Compl. ¶ 27.]

Despite this opposition, on January 19, 2021, the Planning Board issued Resolution No. 18-P-0020, which approved Mr. Foulke's application with several conditions of use, including restrictions on vehicle parking, delivery locations, test-driving routes, and the use of car horns to locate vehicles.    [Compl. ¶ 37; Resolution No. 18-P-0020 at 24–26.]  Plaintiffs claim no other car dealerships in the Township are required to comply with similar conditions.  [Compl. ¶ 38.]  Mr. Foulke accepted the conditions with the understanding that they would be enforced after the demolition and construction projects were complete.  [Compl. ¶¶ 42–44.]

Due to delays caused by the COVID-19 pandemic, Plaintiffs did not apply for zoning and demolition permits to begin the parking lot expansion project until late 2022.  [*Id.* ¶¶ 45, 47.]  In December 2022, the Township issued Mr. Foulke a zoning permit for the construction aspects of the project that advised:  "Failure to comply with any and all conditions of the Planning Board approval (#18-P-0020), particularly those enumerated under #6 on pages 24 through 26 of the approving Resolution, may result in the rescinding of this permit."  [*Id.* ¶¶ 48–49; *see also* Compl. Ex. C (Docket No. 35-3) (the "Construction Permit").]  The Township also issued Lenny two zoning permits for the demolition aspects of the project.  [Compl. ¶ 50; Compl. Ex. D (Docket No. 35-4) (the "Demolition Permits" and together with the Construction Permit, the

"Permits").]  Notably, the language regarding compliance with the conditions in the Construction Permit was not included in the two Demolition Permits.  [Compl. ¶ 51.] Plaintiffs commenced demolition and site preparation in early 2023.  [*Id.* ¶ 52.]

Shortly thereafter, though, the Township received a noise complaint about the Dealership Property.  [*Id.* ¶ 54.]  The Township investigated and concluded that Plaintiffs had failed to comply with the Planning Board's conditions, particularly the prohibition on using car alarms to locate vehicles.  [*Id.* ¶¶ 55–58.]  On February 22, 2023, the Township issued Plaintiffs a Notice of Violation, alleging that Cherry Hill Dodge employees were using car horns to locate vehicles, in violation of certain noise ordinances.  [Compl. Ex. G (Docket No. 35-7); Compl. ¶¶ 57–60.]  However, the notice did not identify specific vehicles, employees, or instances of horn use.  [Compl. ¶ 58.]  The notice stated that "[f]ailure to correct and resolve the violation will leave us with no other option than taking immediate action through the Cherry Hill Municipal Court in accordance with Section 5-1.6 of the Cherry Hill Township General Ordinance for violations that extend beyond the abatement date of Friday, March 3, 2023."  [*Id.* ¶ 59; Compl. Ex. G at  1.]  Plaintiffs claim that they never received the notice.  [Compl. ¶¶ 63–64.]

Mr. Maloney and other local residents raised further complaints at a Township Council meeting on February 27, 2023.  [*Id.* ¶ 65.]  Mr. Foulke did not participate in the meeting, but was later advised of the complaints by Cosmos Diamantis, a Township representative.  [*Id.* ¶ 66.]  Mr. Foulke denied the allegations.  [*Id.* ¶ 67.]  To appease Mr. Maloney, Mr. Diamantis advised Mr. Foulke to abandon his plan to build

a parking lot and to instead sell the Additional Property to the Township to develop a park or green space for the neighborhood.  [*Id.* ¶ 70.]  Mr. Foulke refused.  [*Id.*]

On April 17, 2023, the Township held a meeting during which it considered a request by Mr. Maloney to revoke Plaintiffs' Permits.  [*Id.* ¶¶ 71–73, 75.]  Plaintiffs, again, were not notified of this meeting.  [*Id.* ¶ 85.]  Following this meeting, the Township provided Mr. Maloney with a direct email address for filing complaints.  [*Id.* ¶¶ 78.]  It is unclear if this is unusual.  Over the next three days, Mr. Maloney sent the Township more than twenty-five emails with complaints against Cherry Hill Dodge.  [*Id.* ¶ 79.]  Then on April 20, 2023, the Township rescinded Plaintiffs' Permits, citing alleged violations of the Planning Board's conditions.  [*Id.* ¶¶ 80–81.]  Each rescission notice advised that the applicable Permit was rescinded "without prejudice" and would be reissued upon confirmation of compliance with all conditions of approval.  [*Id.* ¶¶ 81–82; Compl. Ex. E (Docket No. 35-5).]  Plaintiffs were unaware of the reasons for the rescission, as Mr. Foulke did not learn about the April 17 meeting until reading about it on a neighborhood blog on May 1, 2023.  [Compl. ¶¶ 83, 85.]  When Plaintiffs asked the Township's counsel for the basis for the rescission, they were met with threats of rescinding their use of another property.  [*Id.* ¶ 84.]

Plaintiffs appealed the rescission to the Zoning Board under N.J. STAT. ANN. §§ 40:55D-70(a), 40:55D-72.  [*Id.* ¶ 121; Compl. Ex. H (Docket No. 35-8) (Notice of Administrative Appeal).]  The Zoning Board held a hearing on September 7, 2023 [Compl. ¶¶ 123] and thereafter denied Plaintiffs' appeal.  [*Id.* ¶¶ 136, 139; Compl. Ex. J (Docket No. 35-10) (Zoning Bd. Resolution).]

Despite attempts to demonstrate compliance with Resolution No. 18-P-0020, to date, Defendants have refused to reinstate the Permits. [Compl. ¶¶ 92–94, 140.] On October 31, 2023, Plaintiffs filed a complaint in lieu of prerogative writs in New Jersey Superior Court to challenge the determination of the Zoning Board. [*Id.* ¶ 169.] That civil action involves essentially the same facts as those involved here, but substantively different claims. On January 22, 2025, the New Jersey Superior Court granted Plaintiffs summary judgment on the prerogative writ count and vacated the rescission of the Permits, but stayed enforcement of the order for 60 days. [N.J. Super. Ct. Order (Docket No. 44).] The court denied Defendants' subsequent motion for reconsideration and Defendant thereafter filed an appeal of the court orders. [Pls.' Ltr. (Docket No. 47).] To the best of the Court's knowledge, the appeal remains pending.

## II.    PROCEDURAL HISTORY

On May 9, 2023 – the same day Plaintiffs appealed the rescission of the Permits to the Zoning Board – Plaintiffs initiated this action seeking reissuance of the Permits and damages. Defendants filed an initial motion to dismiss the complaint. [Docket No. 19.] Rather than opposing the motion, Plaintiffs filed the First Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). [Docket No. 22.] Notably, Plaintiffs no longer sought mandamus in the form of an order directing the reissuance of the rescinded Permits. [*Compare* First Am. Compl. at "Wherefore" clauses, *with* Compl. at "Wherefore" clause.] In light of the amendment, the Court denied the first motion to dismiss as moot. [Docket No. 23.]

Defendants then moved to dismiss the First Amended Complaint. [Docket No. 26.] The Court granted the motion on July 29, 2024, reasoning that the First Amended Complaint was an impermissible "shotgun" pleading, but granted Plaintiffs leave to amend. [Docket Nos. 34, 35.]

Plaintiffs subsequently filed the operative Second Amended Complaint, asserting the following counts: (1) a violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution against the Township; (2) a violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution against the Zoning Board; (3) a violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution against the Township; (4) a procedural violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution against the Township; (5) a procedural violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution against the Zoning Board; (6) a substantive violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution against the Township; and (7) a substantive violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution against the Zoning Board. Plaintiffs seek damages, declaratory relief in the form of an order declaring that Defendants have violated Plaintiffs' constitutional rights, injunctive relief directing Defendants to cease violating their rights, and attorneys' fees and costs. [Compl. at "Wherefore" clauses.]

On September 13, 2024, Defendants filed the instant Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that the Complaint fails to cure the

deficiencies previously identified by the Court, does not state a claim for relief under federal law, and that the case remains unripe for federal adjudication.

## III.  LEGAL STANDARDS

Defendants move to dismiss the Complaint under both Rule 12(b)(1) and Rule 12(b)(6).  A Rule 12(b)(1) motion may present either a facial or factual challenge to the court's subject matter jurisdiction.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial challenge contests the sufficiency of the allegations in the complaint, and the court must accept all well-pled allegations as true and construe them in the plaintiff's favor.  *In re Schering Plough Corp. Intron / Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  By contrast, a factual challenge disputes the existence of jurisdiction itself, permitting the court to consider extrinsic evidence beyond the pleadings.  *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In such cases, the burden is on the plaintiff to establish that jurisdiction is proper.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991).

A challenge to the ripeness of an action is properly brought as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005) (first citing *Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319 (3d Cir. 1998); then citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004)).  "A claim is not ripe for adjudication if it rests upon 'contingent

future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted). "Because ripeness affects justiciability, . . . unripe claims should ordinarily be disposed of on a motion to dismiss." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993). And "[a]s long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court 'may inquire, by affidavit or otherwise, into facts as they exist.'" *Id.* at 1290 n.7 (quoting *Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 n.10 (3d Cir. 1992)).

A motion to dismiss under Rule 12(b)(6), by contrast, challenges the sufficiency of the complaint. Courts will dismiss a complaint under Rule 12(b)(6) if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus*, 641 F.3d at 563 (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 663; *see also Malleus*, 641 F.3d at 563.

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt*, 770 F.3d at 249 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## IV.    DISCUSSION

Plaintiffs sue the Township and the Zoning Board pursuant to 42 U.S.C. § 1983.[2] [Compl. ¶ 1.]  Section 1983 provides that "[e]very person who, under color of any [law] . . . , subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.  However, Section 1983 does not in itself confer any rights; to prevail on a Section 1983 claim, a plaintiff must ground that claim in a right conferred by the Constitution or the laws of the United States.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994).  Additionally, the alleged deprivation must have been "committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Burella v. City of Phila.*, 501 F.3d 134, 139 (3d Cir. 2007).  Municipalities and

---

[2]    Plaintiffs no longer name Cherry Hill Zoning Officer Kathleen Gaeta as a defendant.  Nor do they seek punitive damages.

other local government units are "persons" for the purposes of Section 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976).

Plaintiffs allege violations of procedural and substantive due process and equal protection as guaranteed by the Fourteenth Amendment, as well deprivation of just compensation for the taking of private property as secured by the Takings Clause of the Fifth Amendment. [Compl. ¶ 1.] They allege that the Township and the Zoning Board deprived them of these rights while acting under color of state law. [*Id.* ¶¶ 1, 7.]

**A. Ripeness**

Before turning to the adequacy of Plaintiffs' allegations, the Court must first address whether the claims are ripe. As ripeness goes to this Court's subject matter jurisdiction, the Court can and must address the issue *sua sponte* regardless of the arguments posited by Defendants. *Felmeister v. Office of Atty. Ethics*, 856 F.2d 529, 535 (3d Cir. 1988).[3]

_____

[3]    Defendants argue only that the due process claims should be dismissed for lack of subject-matter jurisdiction on ripeness grounds. [Defs.' Br. at 8–12; Defs.' Reply at 10–11.] Defendants do not challenge Plaintiffs' other claims on ripeness grounds, noting that a Fifth Amendment Takings claim is "ripe when the government takes property without paying for it and that the property owner may bring the claim in federal court at that time without first exhausting post-taking remedies under state law." [Defs.' Br. at 27 n.4 (citing *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 190 (2019).] But *Knick* addresses exhaustion of administrative remedies only; "the finality requirement was not 'at issue' in *Knick*." *River Valley Heights Corp. v. Twp. of W. Amwell*, No. 21-2042, 2023 WL 1433634, at *2 (3d Cir. Feb. 1, 2023) (quoting *Knick*, 588 U.S. at 188); *see also Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 475 (2021) (reaffirming the validity of the finality requirement after *Knick*).

According to Defendants, the pendency of Plaintiffs' state-court action in lieu of prerogative writs forecloses Plaintiffs' claims at this juncture. [Defs.' Br. at 9–11.] Plaintiffs oppose, arguing that their claims are ripe because Defendants' actions have injured Plaintiffs by depriving them of their constitutional rights for the last two years. [Pls.' Opp'n at 25.]  In Plaintiffs' words: "the core action being challenged in the [Complaint] is not state law or a prerogative writ, but instead violations of the" U.S. Constitution.  [*Id.*]

The ripeness doctrine operates "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  *Id.* (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).

To determine whether an action is ripe for review, courts evaluate (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration."  *Id.* at 808 (citing *Abbott Labs.*, 387 U.S. at 149). Under the fitness prong, courts consider "whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged action is final." *Phila. Fed'n of Teachers*, 150 F.3d at 323.  As the court in *Philadelphia Federation of Teachers*

13

explained, various factors are relevant to the fitness determination, including "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse." *Id.* (citation omitted). Under the hardship prong, courts consider whether the proponent of federal jurisdiction would suffer an "immediate and significant hardship should judicial review . . . be deferred." *Felmeister*, 856 F.2d at 537.

The Court begins its evaluation of fitness for judicial review with finality. "The finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 594 U.S. at 478 (cleaned up). According to Defendants, Plaintiffs' claims are not ripe for this Court's review because "Plaintiffs' appeal of the Zoning Board's decision remains pending in Superior Court," meaning the decision is not yet final. Defendants' argument is misplaced.

First, while the instant motion has been pending, the Superior Court has rendered its decision and found that the Zoning Board's rescission was arbitrary, capricious, and unreasonable, and vacated the rescission.[4] [N.J. Super. Ct. Order; Pls.' Ltr. (Docket No. 46).] Second – and more fundamentally – the pendency of the

---

[4] "It is well-settled that a decision of a zoning board may be set aside only when it is 'arbitrary, capricious or unreasonable.'" *Cell S. of New Jersey, Inc. v. Zoning Bd. of Adjustment Of W. Windsor Twp.*, 796 A.2d 247, 251 (N.J. 2002) (quoting *Medici v. BPR Co.*, 526 A.2d 109, 116 (N.J. 1987)).

state court case is irrelevant as it does not address the key question of whether the "local land-planning authorities [have had] the opportunity to render a final decision" on the Permits. *Taylor*, 983 F.2d at 1290. It is the decision of the *zoning authorities* that must be final – not the court's decision on review. *Id.*

> As the Third Circuit in *Taylor* explained:
>
> In the context of land-use decisions, [Supreme Court precedent] requires *state zoning authorities* be given an opportunity to arrive at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question before its owner has a ripe constitutional challenge based on the disputed decision. This finality rule recognizes that, with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner.

*Id.* at 1291 (cleaned up) (emphasis added); *accord Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir. 2003) ("It is well-established that, in § 1983 cases involving land-use decisions, a property owner does not have a ripe claim until the zoning authorities have" come to "a final, definitive position" on the application of the regulations to the land in question). The pendency of the state court case is immaterial to this inquiry. A "[p]laintiff need only secure a final decision from the [Zoning Board] on his application for a [zoning] permit before his claims are mature." *Acierno v. Mitchell*, 6 F.3d 970, 976 (3d Cir. 1993).

Here, Plaintiffs have clearly done so. The Township rescinded Plaintiffs' Permits after neighbors complained about noise ordinance violations. Plaintiffs then appealed the Township's decision to the Zoning Board pursuant to state law, and the Zoning Board denied their appeal, making the decision final and determinative.

What's more, this is not a case where Plaintiffs' alleged constitutional injuries have not matured. *Taylor*, for example, also involved the revocation of a use permit. The plaintiffs there, however, did not appeal the decision of the zoning officer to the Zoning Board, nor did they seek a variance or exception, prior to filing suit in federal court. *Taylor*, 983 F.2d at 1291–92. The Third Circuit determined that the plaintiffs had not yet suffered a mature constitutional injury because the zoning authority decision was not final. *Id.*; *see also Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 686 (3d Cir.1991) (until city renders final decision on application of building and fire regulations to plaintiff's property, no mature constitutional claim based on enforcement of those regulations exists). By contrast, the Township made its decision two years ago, the Zoning Board affirmed that decision, and Defendants continue to enforce the decision to this day. Despite Plaintiffs' efforts to show compliance with all noise and other ordinances, the Permits have not been reinstated.

Plaintiffs are not "prematurely suing over a hypothetical harm." *Pakdel*, 594 U.S. at 479. Defendants' decision forced Plaintiffs to stop demolition of the houses on the Additional Property midway through, allegedly rendering the property unusable for any purpose for two years. Any constitutional injury stemming from the Defendants' decision to rescind the Permits matured long ago. *See Lauderbaugh*, 319 F.3d at 575 (claim is ripe when "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."); *see also Pakdel*, 594 U.S. at 478–79 ("there is no question that the government's definitive position on the issue has inflicted an actual, concrete injury of requiring petitioners to choose

16

between surrendering possession of their property or facing the wrath of the government.") (cleaned up).  Given the time that has passed since Defendants' decision became final and Defendants' steadfast enforcement of that decision to this day, the Court sees no need for additional factual development or further administrative action to clarify their position.  In sum, the Court finds that Plaintiffs' claims are fit for judicial review.[5]

The Court now turns to hardship.  "[I]t is settled that in order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant." *Felmeister*, 856 F.2d at 537.  But this presupposes that the decision is not final.  Here, Defendants' decision is final and determinative and there are no "prudential interests in deferral."  In any event, Plaintiffs will unquestionably suffer hardship if this Court were to defer their constitutional claims, which are plainly not at issue in the state court action.

---

[5]    To be clear, this Court is not here acting as a "zoning board of appeals." *See Acierno*, 6 F.3d at 974.  Plaintiffs do not seek reinstatement of the permits from this Court; that is before the state court.  The state court action in lieu of prerogative writs, though based on the same underlying facts, involves claims and remedies separate and apart from those before this Court. *See Casser v. Twp. of Knowlton*, No. 3:17-CV-01174(PGS), 2018 WL 6069165, at *3 (D.N.J. Nov. 20, 2018), *aff'd*, 803 F. App'x 602 (3d Cir. 2020) (describing features of an action in lieu of prerogative writs: "(1) it solely reviews the municipal action; (2) it does not award damages; (3) it is based solely on the record before the municipal zoning board; (4) there is no right to a jury; and (5) the goal is to expeditiously review the reasonableness of the municipal action rather than awarding damages to the landowner.").  This Court is only adjudicating Plaintiffs' claims arising under the U.S. Constitution.

Accordingly, the Court finds that Plaintiffs' claims are ripe for adjudication and turns to the merits of Plaintiffs' allegations.

### B. Section 1983 *Monell* Liability

Next, Defendants argue that Plaintiffs' claims all fail because Plaintiffs do not adequately allege municipal liability under Section 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). [Defs.' Br. at 6–7.] It is true that "[a] municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Rather, to establish municipal liability under Section 1983, a plaintiff generally must demonstrate that a municipal policy or custom was the "moving force" behind the constitutional tort of one its employees. *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). *Monell* also establishes that actions undertaken directly by municipal subdivisions, such as boards of education, "unquestionably involve[ ] official policy." *Monell*, 436 U.S. at 694. Defendants contend that the Complaint must be dismissed because it is "devoid" of any allegations of an unconstitutional custom, practice, or policy that damaged Plaintiffs. [Defs.' Br. at 7.] The Court agrees. There are no allegations of any custom, policy, or practice that violated Plaintiffs' rights.

Defendants, however, entirely ignore the body of case law that provides that "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body–whether or not that body had taken similar action in the past or

intended to do so in the future–because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *accord Langford v. City of Atlantic City*, 235 F.3d 845, 848 (3d Cir. 2000). The Third Circuit has reiterated that "[t]he Supreme Court's decision in *Pembaur* makes clear that an official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367–68 (3d Cir. 2005). Municipal liability may only be imposed "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481; *accord Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 127–28 (3d Cir. 2016) ("An official has final policy-making authority, and can thus bind the municipality by his conduct if the official is responsible for making policy *in the particular area* of municipal business in question and the official's authority to make policy in that area is *final and unreviewable*.") (emphasis in original) (cleaned up). Whether an official or entity is a final policymaker is a question of state law. *Ecotone*, 639 F. App'x at 128; *McGreevy*, 413 F.3d at 368.

Defendants have not argued that the rescission of the Permits was made by any person or entity lacking final policy-making authority. And it appears that the Zoning Board is the exclusive and final decisionmaker in this context. N.J. STAT. ANN. § 40:55D-20 ("Any power expressly authorized by this act to be exercised by (1) planning board or (2) board of adjustment shall not be exercised by any other body, except as otherwise provided in this act."); N.J. STAT. ANN. § 40:55D-70 (enumerating

the powers of zoning boards of adjustment). As a result, the Court declines to dismiss Plaintiffs' claims under *Monell* at this stage.

### C. Takings Clause Claims (First and Second Counts)

The First and Second Counts of the Complaint assert violations of the Takings Clause of the Fifth Amendment against both the Township and the Zoning Board. Plaintiffs allege that Defendants' rescission of the Permits has rendered the Additional Property "economically unviable" and "useless for any purpose." [Compl. ¶¶ 106, 114, 116, 141, 163, 167.] Seeking to dismiss these claims, Defendants argue that they have neither deprived Plaintiffs of a cognizable property right under the Takings Clause nor substantially interfered with the economically beneficial use of their property." [Defs.' Br. at 27–33; Defs.' Reply at 5–8.]

The Takings Clause of the Fifth Amendment of the Constitution provides that "private property [shall] not be taken for public use, without just compensation." U.S. Const. amend. V. The clause applies to state and local governments through the Fourteenth Amendment. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017); *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018). "A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022) (citing *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017)); *see also Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004) ("[T]he plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question."). Once a property interest has been identified, courts next ask: "(1) was

20

there a taking?; (2) was that taking for public use?; and (3) did the claimant receive just compensation?" *In re Trs. of Conneaut Lake Park*, 855 F.3d at 525.

The Takings Clause protects against two distinct types of takings. First, the classic or "paradigmatic" taking involves the government's "direct appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). These takings are "rare" and "easily identifiable." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (2002); *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (referring to government encroachment or occupation of private property as the "clearest sort of taking").

These sorts of takings admit of "straightforward application of *per se* rules." *Tahoe-Sierra*, 535 U.S. at 322. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Id.* (internal citation omitted). Said more simply, "[t]he government must pay for what it takes." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021).

The second type of taking is a "regulatory taking"—a phrase of relatively recent vintage. *See Yee v. Escondido*, 503 U.S. 519, 527 (1992). "Before the 20th century, the Takings Clause was understood to be limited to physical appropriations of property." *Hassid*, 594 U.S. at 148. But writing for the Supreme Court in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), Justice Holmes declared that "while property may be

regulated to a certain extent, if regulation goes *too far* it will be recognized as a taking." *Id.* at 415 (emphasis added).  In the years since *Pennsylvania Coal*, the Supreme Court has generally resisted any set formula for determining when a regulation is so onerous as to run afoul of the Takings Clause, embracing instead "'ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'" *Murr*, 582 U.S. at 393 (quoting *Tahoe-Sierra*, 535 U.S. at 322).

Having set forth these background principles, the Court first considers whether Plaintiffs have alleged that Defendants' actions interfered with a cognizable property right.  It then turns to whether Plaintiffs have alleged a regulatory taking.[6]

### i.    Cognizable Property Interest

As explained above, "[a] threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest." *Nekrilov*, 45 F.4th at 669 (citing *In re Trs. of Conneaut Lake Park*, 855 F.3d at 526).  To determine whether a plaintiff's asserted interest is cognizable, courts should refer to "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  After all, the Constitution does not create property interests; it only protects them. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998).

---

[6]    This action involves only an alleged regulatory taking, not a *per se* direct appropriation or physical invasion taking.  [*See* Defs.' Br. at 29; Pls.' Opp'n at 7–9.]

Here, Plaintiffs claim that they have a cognizable property interest in expanding the Cherry Hill Dodge parking lot onto the Additional Property, consistent with the Planning Board's resolution approving Mr. Foulke's application to do so. [*See* Pls.' Opp'n at 7–8.]  They also assert an interest in the Permits that authorized the demolition of the residential structures on the property, which the Township rescinded. [*See id.*]  Relying on this Court's decision in *Deptford Commons, LLC v. Township of Deptford*, 2023 WL 5551025 (D.N.J. Aug. 29, 2023), Defendants submit that Plaintiffs' asserted property interests are not cognizable under the Takings Clause because they do not have a right to "the zoning permits that were rescinded." [Defs.' Reply at 5–6.]

The Court disagrees with Defendants under the circumstances alleged in the Complaint.  Once the Township issued the Permits, Plaintiffs acquired vested rights in them, even if they were discretionary benefits.  *See In re Island Bay, LLC*, 2006 WL 1687222, at *7 (N.J. Super. Ct. App. Div. June 21, 2006) ("Where a government agency issues a permit or other approval to a property owner to construct a building or other facility, and the property owner substantially relies upon the approval, the property owner may acquire vested rights that the agency may not take away.") (citing *Tremarco Corp. v. Garzio*, 161 A.2d 241, 245 (N.J. 1960)); *see also Montefiore Cemetery Co. v. Bd. of Commr's of City of Newark*, 130 A. 730, 730 (N.J. 1925) (setting aside board's resolution rescinding a permit to operate a cemetery issued to landowner by assignment because he had acquired vested rights when he purchased land and incurred expenses in reasonable reliance on permit).  In this sense, the Township's

23

issuance of the Permits to Plaintiffs is as if they issued them a use variance. *See Dimitrov v. Carlson*, 350 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1975) ("[W]hen a variance is granted the use permitted thereby becomes a conforming use and is in the nature of a vested right."), *cert. denied*, 359 A.2d 487 (N.J. 1976). To the extent a condition of the zoning permit is violated, like that of a use variance, the Township is entitled to enforce such a violation through due process of law. *See Twp. of Pemberton v. Uthman*, 2015 WL 1180920, at *5 (N.J. Super. Ct. App. Div. Mar. 17, 2015) (explaining that "[a] violation of a condition of the variance does not nullify or rescind the variance," but rather "the municipality has the right to enforce the condition in the same way as it may enforce any zoning violation, by means of legal action in court.") (citing *Washington Commons, LLC v. City of Jersey City*, 7 A.3d 225, 228 (N.J. Super. Ct. App. Div. 2010)).

Accordingly, once a discretionary benefit is conferred on a property owner, he possesses a constitutionally protected property interest in that benefit, which can only be withdrawn through due process. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012) ("Property owners . . . have an interest in a discretionary benefit, such as a re-zoning ordinance, after it is conferred.") (citation omitted); *Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 469–70 (6th Cir. 2008) (explaining that plaintiff had a property interest in a building permit once the village administrator issued it). Plaintiffs here possessed a constitutionally protected property interest in the

Permits *once issued*, even if they were not entitled to them in the first place.[7]  The Court thus rejects Defendants' contention that Plaintiffs do not have a cognizable property interest for the purposes of Plaintiffs' claim under the Takings Clause.

### ii.    Regulatory Taking

Precedent instructs that there are two types of regulatory takings. *Nekrilov*, 45 F.4th at 669.  First, there are total takings, where a government regulation denies a landowner "all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).  Second, there are partial takings, where a regulation "impedes the use of property without depriving the owner of all economically beneficial use." *Murr*, 582 U.S. at 393 (citing *Palazzolo*, 533 U.S. at 617). These takings are assessed under the "complex of factors" set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) (the "*Penn Central* Factors"), which include "(1) the economic impact of the regulation, (2) its interference with reasonable investment-backed expectations, and (3) the character of the government action." *Murr*, 582 U.S. at 393 (citing *Palazzolo*, 533 U.S. at 617); *see also Penn Cent.*, 438 U.S. at 124 (announcing relevant factors).  However, "[g]overnment action that

---

[7]    The cases cited by Defendants involved the denial of permit applications, not the rescission of permits that had already been issued like here, and for this reason are inapposite.  *See, e.g.*, *Midnight Sessions*, 945 F.2d at 677 (denial of dance hall licenses did not constitute a taking); *Deptford Commons*, 2023 WL 5551025, at *9 (takings claim premised upon denial of use permit application).  Defendants' reliance upon *Cowell v. Palmer Township*, 263 F.3d 286 (3d Cir. 2001), is similarly misplaced.  *Cowell* involved the imposition of municipal liens on a property which did not affect the plaintiff's use of the property.  *Id.* at 291.

physically appropriates property is no less a physical taking because it arises from a regulation." *Hassid*, 594 U.S. at 149.  In such circumstances, the *Penn Central* factors have no place.  *Id.*

### a.    Total Regulatory Taking

Defendants contend that Plaintiffs cannot allege a total regulatory taking here "because the rescission of the zoning permit[s] . . . does not deprive Plaintiffs of all economically viable uses of the property."  [Defs.' Br. at 30.]  In support of this position, Defendants argue that "a total taking is one that renders the property essentially idle," yet the Cherry Hill Dodge dealership still operates daily, and any loss of anticipated rent revenue or additional business is not cognizable under the Takings Clause.  [*Id.* at 29 (citing *Nekrilov*, 45 F.4th at 670).]  Defendants miss the point.

Plaintiffs' case is not about "a general right to do business."  [Pls.' Opp'n at 8.] Instead, it is about the rescission of already issued Permits which allegedly rendered the Additional Property unusable and unviable for any use whatsoever.  That the Cherry Hill Dodge continues to operate is irrelevant to the question of whether the Additional Property was rendered economically unviable after the rescission of the Permits.  As alleged, the Additional Property is essentially a construction zone at this time; it contains two partially demolished houses on it that cannot be removed in light of the rescission of the Permits.  [Compl. ¶¶ 108, 157.]  And the property cannot be sold without further municipal approval since it has been consolidated with the Dealership Property.  [*See id.* ¶¶ 116–17; Pls.' Opp'n at 10.]

Defendants speculate that the Additional Property "can [be] put to any number of uses" [Defs.' Reply at 6], yet notably fail to suggest any examples. *Cf. Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 269 (D.N.J. 2021), *aff'd*, 45 F.4th 662 (3d Cir. 2022) (ordinance restricting short term rentals did not deprive plaintiffs of all viable economic uses of their properties; "[t]hose properties retain numerous economic uses: the plaintiffs can sell them, rent them as long-term leases, or use them as homes."). Unlike in *Nekrilov*, given the property's current state, the Court is hard pressed to think of any economically viable uses for the Additional Property. It has sat unused, with two partially demolished structures on it, and "essentially idle" for two years. [*See* Compl. ¶¶ 113, 119, 166.] As alleged, the rescission of the Permits allowing demolition and construction on the Additional Property has deprived Plaintiffs of all economically viable uses of the property. This is sufficient to state a claim for a total regulatory taking under the Takings Clause of the Fifth Amendment. *See Umdasch Real Est. USA, Ltd. v. Borough of Wallington*, No. 2:20-CV-16346, 2021 WL 1050230, at *3 (D.N.J. Mar. 19, 2021) (finding that plaintiffs alleged total regulatory taking where zoning ordinance applied only to plaintiffs and "target[ed] the very economic activity that underlies Plaintiffs' business operations."); *Hankinson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A 10-193, 2010 WL 3364116, at *3 (E.D. Pa. Aug. 24, 2010) ("A per se regulatory taking occurs when an agency action deprives an owner of all economically beneficial uses of his or her property.") (citing *Lucas*, 505 U.S. at 1019).

### b.  Partial Regulatory Taking

Plaintiffs contend that, even if they cannot establish a total regulatory taking, the Complaint alleges a partial taking under the *Penn Central* Factors.  As stated above, in assessing whether a partial regulatory taking has occurred, the Court must examine: "(1) the economic impact of the regulation, (2) its interference with reasonable investment-backed expectations, and (3) the character of the government action." *Penn Cent.*, 438 U.S. at 124 (announcing relevant factors).

### 1.  The Economic Impact of the Regulation

"There is no single test to determine the degree of economic impact that will cross the line to a 'taking.'"  *OM 309-311 6th St., LLC v. City of Union City*, No. CV2112051KMJRA, 2022 WL 855769, at *14 (D.N.J. Mar. 23, 2022).  Economic impact, however, is "usually measured in terms of its effect on the value of the property."  *Nekrilov*, 45 F.4th at 673 (internal citations omitted).  Defendants claim that Plaintiffs merely allege that they have been denied the opportunity to profit from additional business and rent revenue, which is insufficient to establish a diminution in property value.  [Defs.' Br. at 30–31.]

Defendants are correct that "lost profits are not an appropriate measure of economic impact."  *Nekrilov*, 45 F.4th at 673.  That being said, Plaintiffs do more than that.  The Complaint alleges that the Additional Property has been rendered "useless" and that the "Township has refused to allow Plaintiffs to use the property for any purpose."  [Compl. ¶¶ 106–07.]  There are two partially demolished houses on the Additional Property, the demolition of which cannot be completed because the

28

Permits were rescinded. [*Id.* ¶ 108.] Affording Plaintiffs every favorable inference to be drawn from the Complaint's allegations, as required at the pleadings stage, the Court finds that these allegations taken together are sufficient to establish a decrease in the Additional Property's value that weighs in favor of finding a taking. *See OM 309-311 6th St.*, 2022 WL 855769, at *14–15.

### 2. *Interference with Reasonable Investment-Backed Expectations*

The Court now examines how the rescission of the Permits interfered with Plaintiffs' reasonable investment-backed expectations. "[D]istinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest." *Nekrilov*, 45 F.4th 674–75. A taking does not occur simply because a plaintiff has "been denied the ability to exploit a property interest that they heretofore had believed was available for development." *Penn Cent.*, 438 U.S at 130. "Zoning regulations are the 'classic example' of permissible regulations that do not require compensation even where they prohibit the most beneficial use of the property." *Nekrilov*, 45 F.4th at 675. It is not reasonable to expect "that zoning laws will remain unchanged during the life of their property ownership." *Pompey Coal Co. v. Borough of Jessup*, No. 3:20-CV-00358, 2023 WL 3260534, at *6 (M.D. Pa. May 4, 2023) (collecting cases). But this is not the open and shut case Defendants claim: this case is not about a zoning law, but rather the rescission of Permits that had already been issued to and acted upon by Plaintiffs.

"[T]he reasonable expectations prong . . . requires that the expectations be investment backed, and in this regard, further analysis is required[:]"

> The first step of the analysis is to determine the actual investment that the [owners] made in the property. The second step is to determine the benefits that the owners reasonably could have expected at the time they entered into the investment. The third step is to determine what expected benefits were denied or restricted by the government action. . . . Finally, the claimant must establish that it made the investment because of its reasonable expectation of receiving the benefits denied or restricted by the government action, rather than the remaining benefits.

*Cienega Gardens v. United States*, 503 F.3d 1266, 1289 (Fed. Cir. 2007).

Plaintiffs have alleged that the Additional Property was purchased specifically "as an investment to be leased to Cherry Hill Dodge as an investment in the operation of its business." [Compl. ¶ 15.] The Additional Property and the Dealership Property were then consolidated as a condition of the approval of Resolution No. 18-P-0020. [*Id.* ¶ 117.] The Complaint further alleges that Plaintiffs "invested considerable time and expense" on improvements to the Additional Property so that the parking lot could be expanded, as permitted by the Township. [*Id.* ¶ 34.] Plaintiffs also began demolition work on the Additional Property before the Permits were rescinded. [*Id.* ¶ 52.] All of these investments were made with Defendants' express approval through the issuance of the Permits. Nothing in the Complaint suggests that Plaintiffs' investment-backed expectations were not reasonable. And now, these ample investments are for naught given the Township's rescission of the Permits.

Additionally, Plaintiffs have argued – and the state court has found – that Defendants acted arbitrarily and capriciously in rescinding the Permits. Courts have found this sufficient to allege an interference of investment-backed expectations. *See, e.g.*, *Holcim - NER, Inc. v. Town of Swampscott*, 671 F. Supp. 3d 84, 94 (D. Mass. 2023)

("According to plaintiff, defendants abandoned their long-standing permitting practices, acted arbitrarily and imposed unjustified and bias-driven restrictions. Given such allegations at this stage of the proceedings, the Court acknowledges the reasonableness of plaintiff's investment-backed expectations."); *OM 309-311 6th St.*, 2022 WL 855769, at *15 ("It should go without saying that one of any property owner's reasonable investment-backed expectations is the expectation that the government will follow the law. It is plausibly alleged that by refusing to follow the law, the Board interfered with plaintiffs' investment-backed expectations and thereby reduced the value of their properties.").

For these reasons, the Court finds that Plaintiffs have sufficiently alleged that the Township's rescission of the Permits interfered with their reasonable investment-backed expectations.

### 3.  *Character of the Government Action*

The final *Penn Central* Factor addresses the character of the Township's action. Generally, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent.*, 438 U.S. at 124. Government action that "does not substantially advance legitimate state interests, . . . or denies an owner economically viable use of his land," however, may constitute a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 484–85 (1987).

The crux of Plaintiffs' case is that the decision to rescind the Permits was made in bad faith, arbitrarily, and capriciously, with no notice to Plaintiffs, and to advance only the interests of the Maloney family, rather than legitimate state interests. [*See, e.g.*, Compl. ¶¶ 71, 74, 95, 128, 155, 160, 164, 184–88, 275.] "The Supreme Court has recognized that bad faith on behalf of the government can weigh in favor of a taking." *OM 309-311 6th St.*, 2022 WL 855769, at *16 (citing *Tahoe-Sierra*, 535 U.S. at 333 (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 698 (1999)); *Wyatt v. United States*, 271 F.3d 1090, 1098 (Fed. Cir. 2001)). To be sure, alleging bad faith is a far cry from proving it and "[m]uch fact finding remains to be done in this case," but at this stage, the Court finds that Plaintiffs have sufficiently alleged a regulatory taking under the *Penn Central* Factors. *See id.*

The Court is not swayed by Defendants' appeal to the Supreme Court decision in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). Citing *Lucas*, Defendants contend that they owe Plaintiffs "no compensation for requiring [them] to abate a nuisance on [their] property, because [they] never had a right to engage in the nuisance in the first place" and no taking occurs when the government merely asserts a "pre-existing limitation upon the landowner's title." [Defs.' Br. at 32 (citing *Lucas*, 505 U.S. at 1028–30).] But, as Plaintiffs note, there were no pre-existing limitations on Plaintiffs' title. [Pls.' Opp'n at 11.] To the extent Defendants argue that "background principles of nuisance and property law" prohibited Plaintiffs' use of the property, *see Lucas*, 505 U.S. at 1029–30, there is clearly a dispute between the parties as to whether the conditions imposed by Resolution No. 18-P-0020 were applicable

during the construction and demolition period or solely once the parking lot was completed. At the pleadings stage, the Court cannot resolve this and must accept Plaintiffs' allegations as true and draw all reasonable inferences therefrom in the light most favorable to Plaintiffs. In keeping with this, the Court rejects Defendants' argument that the conditions in Resolution No. 18-P-0020 were pre-existing limitations on Plaintiffs' title militating against a taking. The Court also rejects Defendants' attempt to justify its actions under the Municipal Land Use Law, N.J. STAT. ANN. 40:55D-18. This statute, as Plaintiffs correctly point out, addresses the issuance or denial of permits, not their rescission.[8]

Accordingly, the Court finds that Plaintiffs have plausibly alleged a regulatory taking under the Fifth Amendment. Defendants' motion to dismiss the First and Second Counts of the Complaint is, therefore, denied.

---

[8]    The Court likewise will not dismiss the Takings Clause claims under the Supreme Court's decision in *DeVillier v. Texas*, 601 U.S. 285 (2024). [Defs.' Reply at 7.] The Court need not consider this argument, as it was raised for the first time in Defendants' Reply, to which Plaintiffs had no opportunity to respond. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'") (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir. 1991)). Regardless, *DeVillier* "[did] not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings clause." 601 U.S. at 292. And, in any case, Plaintiffs have "an independent cause of action designed to remedy [Defendants'] alleged violations of [their] Takings Clause right, Section 1983. Indeed, [Plaintiffs'] Takings Clause claim[s . . . ] explicitly rel[y] upon Section 1983 in the heading[s]." *Kelly v. Bell*, No. 4:22CV1940, 2024 WL 5111955, at *7 (M.D. Pa. Dec. 13, 2024).

### D. **Equal Protection Claim (Third Count)**

The Court next addresses whether the Amended Complaint states a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This command "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, laws that distinguish between persons based on "suspect classifications," such as race and national origin, or fundamental rights, such as the right to travel, marry, and vote, are subjected to "the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (collecting cases). Intermediate scrutiny is applied to classifications based on sex or "illegitimacy." *Id.* Otherwise, legislation will survive constitutional scrutiny if it is rationally related to a legitimate governmental interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also Tolchin v. Supreme Ct. of New Jersey*, 111 F.3d 1099, 1113 (3d Cir. 1997) ("as a general matter, economic and social legislation is subject to rational basis review.") (citation and internal quotation marks omitted).

To state a claim under the Equal Protection Clause, a plaintiff must allege that the government intentionally discriminated against him because of his membership in a protected class. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). Alternatively, pursuant to the "class of one" theory, a plaintiff who is not

a member of a protected class must allege that he has been intentionally treated differently from other similarly situated persons without a rational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000).

Here, Plaintiffs proceed under the class of one theory. As such, they must allege that (1) Defendants have treated them differently from others similarly situated, (2) Defendants did so intentionally, and (3) there is no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

### i.    Treated Differently From Others Similarly Situated

As to the first element, Plaintiffs argue that they have identified numerous similarly situated businesses that have not been subjected to punitive use conditions and whose permits have not been revoked based upon unfounded noise complaints. The Court agrees. Plaintiffs have identified several specific car dealerships and their precise locations in close proximity to Cherry Hill Dodge and alleged that Defendants have never investigated these dealerships for noise ordinance violations as they have Cherry Hill Dodge. [Compl. ¶ 174.] Neither has the Township subjected other Cherry Hill car dealerships to the stringent conditions set forth in Resolution No. 18-P-0020. [*Id.* ¶¶ 177–80.] The Complaint further alleges that while another local business, a restaurant, was investigated for noise violations during construction, none of its permits were rescinded. [*Id.* ¶ 175.] Indeed, Plaintiffs allege upon information and belief that the Township has *never* rescinded the zoning permit of any other Cherry Hill business or resident after it was issued. [*Id.* ¶¶ 176, 181.]

This level of detail is sufficient at this stage. Plaintiffs have alleged that car dealerships operating along the same strip of highway in Cherry Hill are not subject to the same onerous operating conditions that Defendants claim as the basis for unilaterally rescinding the Permits. What's more, none of these dealerships have been targeted due to noise complaints. This goes far beyond "pointing to nearby parcels in a vacuum," as Defendants contend. *See 8600 Landis, LLC v. City of Sea Isle City*, No. CV 17-2234 (RMB/JS), 2018 WL 6522911, at *6 (D.N.J. Dec. 12, 2018) (quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013)). These allegations, coupled with those that Mr. Foulke and his businesses were targeted specifically on behalf of his neighbor, the uncle of the Township's CFO and Controller, are sufficient to establish the first element. *See Ecotone*, 639 F. App'x at 124.

### ii. Rational Basis for Disparate Treatment

As Defendants do not appear to challenge the second element of the class of one claim, the Court turns to whether Plaintiffs have alleged that there is no rational basis for the difference in treatment. "The Supreme Court has held that a 'class of one' can attack intentionally different treatment if it is 'irrational and wholly arbitrary.'" *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (citing *Olech*, 528 U.S. at 564–65). In other words, where there is any "reasonably conceivable state of facts that could provide a rational basis" for the disparate treatment, a "class of one" equal protection claim fails. *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). This standard is

"doubtless difficult for a plaintiff to meet in a zoning dispute." *Eichenlaub*, 385 F.3d at 286 (citing *Olech*, 528 U.S. at 565–66 (Breyer, J., concurring)).[9]

Defendants argue that they can easily meet the very low bar of establishing a rational basis for the rescission of the Permits.[10]  According to Defendants, the rescission of the Permits in response to the community's complaints was "measured, appropriate and entirely rational." [Defs.' Br. at 36.] Yet this argument is premature and inappropriate at this stage.  It clearly involves a jury question.  [Pls.' Opp'n at 18.] In any event, the allegations in the Complaint – which this Court must accept as true – suggest otherwise.  As alleged, Defendants capitulated to the wishes of a politically connected resident and imposed strict conditions of operation on Cherry Hill Dodge – conditions to which no other car dealership in Cherry Hill has been subjected, and, of course, all supposedly without notice to Plaintiffs.  [Compl. ¶¶ 30, 38, 39, 243, 265.] These allegations are suggestive of irrationally and wholly arbitrary treatment.

Defendants also attempt to rationalize their disparate treatment of Plaintiffs by claiming that they were exercising discretionary decision-making that permits

---

[9]    And to be sure, an equal protection claim cannot be used in a land use dispute "as a device to dilute the stringent requirements needed to show a substantive due process violation." *Eichenlaub*, 385 F.3d at 287.

[10]    Defendants characterize the rescission as "conditional." [Defs.' Br. at 36.]  The Court finds this to be disingenuous given that there is no procedure by which Plaintiffs can seek reissuance of the Permits and all attempts by Plaintiffs to do so have been categorically rebuffed by Defendants.  This utter refusal to reissue the Permits, notwithstanding Plaintiffs' efforts to show compliance with all noise ordinances and conditions and the New Jersey state court's vacatur of the rescission, smacks of irrational and arbitrary conduct.

"treating like individuals differently." [Defs.' Br. at 37 (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).] According to Plaintiffs, though, Defendants did not have discretion to rescind the Permits based on noise violations as the authority to determine whether a noise ordinance has been violated is vested in the municipal court after issuance of a summons and a hearing. [Pls.' Opp'n at 17, 20–21.] Yet Defendants unilaterally determined that Plaintiffs violated certain noise ordinances – without giving Plaintiffs notice or an opportunity to be heard – and rescinded the Permits, thereby usurping the role of the municipal court. [Compl. ¶¶ 61–62; Pls.' Opp'n at 20.]

Violation of noise ordinances and protecting the community from public nuisances may certainly be rational bases for government action. But selectively enforcing these restrictions on only Plaintiffs and not the multitude of other car dealerships in the vicinity, and certainly without notice, as alleged, is not rational. *See Olech*, 528 U.S. at 564–65 (finding that property owner stated claim under Equal Protection Clause where village arbitrarily required her to grant a 33-foot easement to connect to the municipal water supply but only required a 15-foot easement from all other property owners). The rational basis claimed by Defendants is simply "not apparent from the complaint." *Ecotone*, 639 F. App'x at 124. As in *Ecotone*, the Complaint "repeatedly characterizes the defendants' conduct as 'discriminatory, arbitrary, capricious, unreasonable, malicious, improperly motivated, and conscience-shocking, and motivated by personal animus." *Id.* Additionally, the state court found that the rescission of the Permits was arbitrary and capricious. [Pls.' Ltr. (Docket

No. 46).] The Court finds that allegations in their totality, particularly at the pleadings stage, are sufficient.

### E. <u>Due Process Claims</u>

#### i.    Procedural Due Process Claims (Fourth and Fifth Counts)

According to Plaintiffs, Defendants deprived them of their procedural due process rights by rescinding the Permits without notice and an opportunity to be heard, with no justification for post-deprivation hearing, and without establishing a procedure by which Plaintiffs may demonstrate compliance so that the Permits may be reissued. Defendants, on the other hand, argue that the claims fail because Plaintiffs were able to be heard at both the Zoning Board appeal hearing and in the state court action, which are constitutionally adequate remedial procedures.

The Fourteenth Amendment of the Constitution forbids a state from depriving a person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. When government conduct is alleged to violate this provision, courts employ a "familiar two-stage analysis." *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984). Courts must assess (1) "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, and property'"; and (2) whether the procedures available to the plaintiff constituted "due process of law." *Id.* (internal citations omitted); *see also Chambers*, 587 F.3d at 194–95 (providing overview of procedural due process claims).

"It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen. of U.S.*,

469 F.3d 94, 98 (3d Cir. 2006). The Court has already determined that Plaintiffs have sufficiently alleged a constitutionally protected property interest in the already-issued Permits. *See supra* at § IV.C.i.

The concept of procedural due process is a flexible one. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The basic elements of procedural due process are notice and an opportunity to be heard." *Sixth Camden Corp. v. Evesham Twp., Burlington Cnty.*, 420 F. Supp. 709, 727 (D.N.J. 1976) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). That Plaintiffs were not given notice or an opportunity to be heard on the initial rescission of the Permits is insufficient. Instead, they must allege that "the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body. In other words, when a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism." *Id.* (internal citations omitted) (first quoting *Bellow v. Walker*, 840 F.2d

40

1124, 1128 (3d Cir. 1988)) then citing *Midnight Sessions*, 945 F.2d at 682). New Jersey law sets forth a process by which a party may appeal the decision of a zoning officer to the Zoning Board. N.J. STAT. ANN. § 40:55D-72(a). Additionally, New Jersey Court Rules allow a party to file a complaint in lieu of prerogative writs in the Superior Court, Law Division. N.J. Ct. R. 4:69-1.

Plaintiffs have utilized both of these procedures, during which they had ample opportunity to be heard and the latter of which has led to a state court order vacating the rescission of the Permits.[11] [*See* Compl. ¶¶ 121–23, 136, 211; N.J. Super. Ct. Order.] "These procedures repeatedly have been found to be constitutionally adequate, and require the dismissal of a plaintiff's procedural due process claim." *1840 P. Cheeseman Rd., LLC v. Twp. of Gloucester Zoning Bd. of Adjustment*, No. 116CV01680NLHKMW, 2016 WL 7325470, at *6 (D.N.J. Dec. 16, 2016) (collecting cases); *accord DeBlasio*, 53 F.3d at 597–98; *John E. Long, Inc. v. Borough of*

---

[11] Plaintiffs complain about the adequacy of the Zoning Board appeal hearing, noting that the evidence they were able to present was limited. [*See, e.g.*, Compl. ¶¶ 124–35.] On its face, the Complaint merely suggests that Plaintiffs do not agree with the Zoning Board's determinations. A generous read of the allegations at most suggests certain imperfections with the process. But the Court does not find that these imperfections rise to the level of a due process violation. To find otherwise "sacrifices the good for the perfect." *See Woodcliff Lake Citizens Against Overdevelopment, Inc. v. Borough of Woodcliff Lake*, No. 20CV16003KSHJSA, 2022 WL 874440, at *7 (D.N.J. Mar. 24, 2022).

*Ringwood*, 61 F. Supp. 2d 273, 279 (D.N.J. 1998), *aff'd*, 213 F.3d 628 (3d Cir. 2000).[12] "[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 122 (3d Cir. 2018). Therefore, Plaintiffs' procedural due process claims must be dismissed to the extent they rely on the rescission of the Permits.[13]

That being said, the Court will allow the procedural due process claims to proceed only insofar as they relate to the lack of any process whatsoever for the reissuance of the Permits upon a showing of compliance. Plaintiffs allege that the Permits were rescinded "without prejudice" and that the Permits would be reissued upon compliance with the conditions in Resolution No. 18-P-0020. [Compl. ¶¶ 81–82 111.] Yet "[t]here is no procedure in place which allows Plaintiff[s] [to] obtain reissuance of the zoning permits" and Defendants have refused to reissue the Permits

---

[12]    The Court nonetheless takes the opportunity to note its unease with the approach taken by the zoning officials in the first instance. Plaintiffs were not provided with the Notice of Violation, nor were they notified of the Township's meeting with Mr. Maloney, the Zoning Enforcement Officer, and others during which rescission of the Permits was discussed. [Compl. ¶¶ 63–64, 73–75.] Incredibly, Plaintiffs did not even learn about the meeting until two weeks later, well after the Permits were rescinded. [*Id.* ¶ 85.]

[13]    Any due process violation was not final until the Zoning Board decided Plaintiffs' appeal and the Court has found that the Zoning Board appeal hearing constituted constitutionally adequate due process. As a result, the Court need not entertain the merits of Defendants' argument that a pre-deprivation hearing was unnecessary due to a public safety emergency [Defs.' Br. at 18–20], though the Court seriously questions whether violation of a noise ordinance constitutes an emergency justifying summary administrative action.

even after Plaintiffs attempted to demonstrate compliance.  [*Id.* ¶¶ 96, 111–12, 140, 142, 200(g), 202.]  Even after inspecting the Additional Property for over a week and finding no violations, Defendants remain resolute in their refusal to reissue the Permits or explain what more must be done to confirm compliance.  [*Id.* ¶¶ 92–94.]  Defendants do not argue that the Zoning Board appeal or the complaint in lieu of prerogative writs adequately remedy this problem.  There is no process at all for reissuance of the Permits, despite the Permits having been rescinded "without prejudice."  "Where there is no process, there can be no due process."  *Meredith v. Stein*, 355 F. Supp. 3d 355, 365 (E.D.N.C. 2018).  Accordingly, at this early stage and drawing all inferences in Plaintiffs' favor, the Court finds this to be sufficient to state a procedural due process violation on this narrow issue only.

### ii.    Substantive Due Process Claims (Sixth and Seventh Counts)

Plaintiffs allege that Defendants violated their substantive due process rights by rescinding their previously issued Permits, thereby depriving Plaintiffs of their property rights for improper corrupt motives, namely benefiting Mr. Maloney.  A zoning official's conduct violates the substantive component of the Due Process Clause of the Fourteenth Amendment when it "shocks the conscience."  *United Artists*, 316 F.3d at 399–400.  What constitutes conduct that shocks that conscience "varies depending on the factual context," *id.* at 400, but "only the most egregious official conduct" can be characterized as "arbitrary, or conscience shocking, in a constitutional sense."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (cleaned up).  "[T]he standard is

sufficiently high to 'avoid converting federal courts into super zoning tribunals.'" *Selig v. N. Whitehall Twp. Zoning Hearing Bd.*, 653 F. App'x 155, 157 (3d Cir. 2016) (quoting *Eichenlaub*, 385 F.3d at 285). Because "[l]and-use decisions are matters of local concern," courts must take care to ensure that "such disputes [are not] transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402; *see also Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011) ("not . . . every violation of state law [should be] 'constitutionalized' through the application of the substantive due process clause.").

Before addressing whether Plaintiffs have adequately alleged that Defendants' conduct shocks the conscience, the Court must consider whether "the particular interest at issue is protected by the substantive due process clause." *Lear v. Zanic*, 524 F. App'x 797, 801 (3d Cir. 2013). The Court has already determined that Plaintiffs had a vested property interest in the Permits once issued. "However, 'not all property interests worthy of procedural due process protection are protected by the concept of substantive due process.'" *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). The Third Circuit and the Supreme Court have provided little guidance on what qualities a property interest must have to be protected by substantive due process. *Id.* That being said, there is "one guiding principle: whether a certain property interest" is constitutionally protected "depends on whether that interest is 'fundamental' under

the United States Constitution." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 427 (3d Cir. 2003) (quoting *Nicholas*, 227 F.3d at 140).

Property ownership is a well-established "interest worthy of substantive due process protection." *Ecotone*, 639 F. App'x at 125 (quoting *DeBlasio*, 53 F.3d at 600). Thus, to the extent that Plaintiffs' claims allege that Defendants' actions deprived them of their property *ownership* rights, they have invoked a fundamental property interest protected by substantive due process.

But there is no case law finding that "something other than full property ownership warrants substantive due process protection." *Selig*, 653 F. App'x at 157. As Defendants' correctly note, "substantive due process is not a blanket protection against unjustifiable interferences with property." [Defs.' Br. at 22 (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).] Courts are "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Court will not venture into these unchartered areas by extending substantive due process protections to other forms of property interests. Therefore, to the extent Plaintiffs' substantive due process claims are "based solely on the rescission of the zoning permits," as Defendants contend, the claims fail because they do not involve a fundamental right meriting substantive due process protection.

Having alleged at least some protected property interest, the Court turns to whether Defendants' conduct "shocks the conscience." There is no "precise" test; the determination involves a fact-specific inquiry. *Eichenlaub*, 385 F.3d at 285. The

standard, however, "is designed to avoid converting federal courts into super zoning tribunals.  What 'shocks the conscience' is 'only the most egregious official conduct.'" *Id.* (internal citations omitted).

Allegations of "improper motives" alone are generally insufficient to meet this standard "because the term 'improper' sweeps much more broadly than 'shocks the conscience.'"  *Ecotone*, 639 F. App'x at 125 (cleaned up).  Allegations of "overly strict application of ordinances relative to other[s]" are also insufficient.  *See Highway Materials*, 386 F. App'x at 257–58 (explaining *Eichenlaub*, 385 F.3d at 286); *accord Selig*, 653 F. App'x at 157 (same).  More is required: allegations of "corruption or self-dealing," interference "with otherwise constitutionally protected activity at the [property], or . . . bias against an ethnic group" may "shock the conscience." *Eichenlaub*, 385 F.3d at 286; *see also Ecotone*, 639 F. App'x at 126 (allegations of yearslong campaign of harassment motivated by personal vendetta against property owners shocked the conscience as "they depict corruption and repeated abuse of government power with the deliberate aim of harming someone.").

The Complaint alleges that Mr. Maloney, a politically well-connected Cherry Hill resident, did not want to be surrounded on three sides by Plaintiffs' car dealership and instead demanded a "green space" next door, and the Township revoked Plaintiffs' Permits to appease him.  [*See* Compl. ¶¶ 27, 70, 250.]  This alone is certainly

suggestive of an improper motive, but Plaintiffs' allegations do not "shock the conscience."[14]  Plaintiffs' substantive due process claims must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, the Courts **GRANTS, in part**, and **DENIES, in part**, Defendants' Motion to Dismiss [Docket No. 39].  The Motion to Dismiss is **DENIED** as to the Fifth Amendment Takings Clause claims (the First and Second Counts), the Equal Protection claim (the Third Count), and the Procedural Due Process claims (the Fourth and Fifth Counts), only insofar as they relate to the alleged lack of due process for reissuance of the Permits.   The Motion to Dismiss is **GRANTED** as to the Procedural Due Process claims (the Fourth and Fifth Counts) in all other respects, and as to the Substantive Due Process claims (the Sixth and Seventh Counts).

Plaintiffs have had ample opportunity to adequately plead their claims; indeed, the operative Complaint is Plaintiffs' third bite at the proverbial apple.  Requiring Defendants to defend against a fourth complaint would be prejudicial and unduly delay this case that has long been stalled at the pleadings stage.  *See Killion v. Coffey*, No. 13-1808 (RMB/KMW), 2016 WL 5417193, at *19 (D.N.J. Sept. 27, 2016), *aff'd*,

---

[14]    Of course, the fact that a "government official's motives can be improper in some way without being conscience-shocking . . . does not mean that executive actions undertaken with improper motives are never conscience-shocking." *Ecotone*, 639 F. App'x at 125.  Should discovery reveal that Defendants' "improper motives" involve more nefarious dealings rising to the level of corruption, self-dealing, or harassment, the Court may revisit this ruling and may allow Plaintiffs an opportunity to seek leave to replead this claim.

696 F. App'x 76 (3d Cir. 2017) (dismissing second amended complaint with prejudice based on undue delay in light of case's lengthy history and prejudice to defendants in having to defend against successive amended complaints); *see also California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004) (leave to amend "is often properly denied" based on "undue delay, bad faith, dilatory motive, prejudice and futility."). As such, Plaintiffs will not be granted leave to further amend their pleadings at this time. The dismissal of the Procedural Due Process claims is **WITH PREJUDICE**. The dismissal of the Substantive Due process claims is **WITHOUT PREJUDICE** to repleading if and only if discovery reveals egregious official conduct beyond what has already been alleged. An appropriate Order will issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: April 30, 2025